## FREDERICK G. BLUM v. MARY BUSH.

*Deed—Condition—Breach—Support of parents.*

A deed from a father and mother to their daughter, containing the following clause immediately after the description of the land, namely: "This deed is given for the full support and care of parties of the first part during their natural life-time. Also said party of the second part shall pay all funeral expenses of parties of the first part,"—is held a conveyance upon condition, which was broken when the grantee abandoned the premises, of which she had taken possession and entered upon the performance of the condition; and that the retention of possession by the parents, and their subsequent conveyance of the land to their son on a similar condition, constituted a sufficient entry for the breach, and terminated the legal right of the daughter under the deed, whose equitable rights are held to have been barred by a settlement made with her parents after such breach.

Appeal from Macomb. (Canfield, J.) Argued April 10, 1891. Decided June 5, 1891.

Bill to quiet title. Defendant appeals. Decree affirmed. The facts are stated in the opinion.

*Eldredge & Spier,* for complainant, contended:

1. If the deed is treated as having been delivered, it created an estate upon condition, and the retention of possession by the grantors, and the reconveyance of the premises, after the breach of the condition by the defendant, should be held equivalent to a re-entry; citing *Richter v. Richter,* 111 Ind. 456 (12 N E. Rep. 698).

2. The courts have frequently held that like deeds should be set aside upon the failure of the grantee to carry out the agreement which constituted the consideration for the conveyance; citing *Patterson v. Patterson,* 47 N. W. Rep. 768; *Nolan v. Nolan,* 78 Mich. 17.

3. Assuming that the deed was delivered, the subsequent conduct of the defendant in abandoning her contract, leaving the premises, and the title of record thereto and the possession thereof in Henry Blum, Sr., denoted to the complainant that he was at liberty to take title by mesne conveyance, and she is equitably estopped from now asserting her paper title; citing Story, Eq. Jur. §§ 705, 705a, 707; and this principle has been frequently applied by this Court; citing *Powell v. Conant,* 33 Mich. 396; *Peake v. Thomas,* 39 Id. 584; *Maxwell v. Bridge Co.,* 41 Id. 453; *Ferguson v. Millikin,* 42 Id. 441; *Lumber Co. v. Fletcher,* 48 Id. 555; *Bell v. Todd,* 51 Id. 21.

*F. P. Monfort* (*T. M. Crocker,* of counsel), for defendant. Brief is confined to a discussion of the testimony, no authorities being cited.

CHAMPLIN, C. J. The bill is filed in this case to have a certain deed declared to be without consideration, void, and of no effect, and to have such deed decreed to be delivered up and canceled, and the complainant's title declared to be complete, absolute, and perfect as against defendant, Mary Bush, and she be decreed to release and convey to complainant all the right, title, and interest she has or claims to have under such deed, and she be enjoined from prosecuting a certain suit in ejectment, and from enforcing a judgment in such suit.

Henry Blum, Sr., and his wife, Margarette Blum, were aged people, who resided on a farm of 30 acres in the township of Erin, Macomb county, Mich. Their children

had grown up, and were married, leaving their parents to reside alone upon this small farm. Besides being aged and infirm, they were afflicted with partial blindness, Mr. Blum being more so than his wife.

In 1880 he made an arrangement with his son. Henry Blum, Jr., to work the farm, and care for himself and wife, and made a deed of the land, signed by himself and wife, by which he conveyed the premises to his son Henry, in consideration of his supporting them and the survivor of them during their lives, but this deed was not delivered.

In 1885 he requested his daughter Mary Bush, who had married George Bush, and was then living upon a farm belonging to her husband in the town of Sterling, Macomb county, to move upon his place, and support and care for himself and wife during their lives and the life of the survivor, and pay all funeral expenses after their decease, for which he promised to give to said Mary a deed of the 30 acres. In compliance with this request Mary Bush and her husband removed to the place in the fall of 1885, and brought with them certain household goods, and some other personal property. After Mary Bush and her husband had been upon the place several weeks, Henry Blum, Sr., and his wife, Margarette, signed a deed, bearing date December 22, 1885, conveying the 30 acres to Mary Bush, which deed purported to be in consideration of one dollar; and immediately after the description are inserted the following words:

"This deed is given for the full support and care of parties of the first part during their natural life-time. Also said party of the second part shall pay all funeral expenses of parties of the first part."

Whether this deed was delivered is a question over which there is a great conflict in the testimony; the grantors testifying that it was not, for the reason that

other papers were to be executed by Mary Bush and her husband to secure to the grantors the performance of the consideration; and the grantee and the subscribing witnesses testifying that it was delivered in their presence. The grantors testify that the deed was not delivered, but remained in their custody and control until produced at the trial; and the defendant testifies that after the deed was delivered to her she kept it for a time in her bureau drawer, and afterwards upon the clock-shelf, until she missed it, and supposed it was lost, or some one had taken it. She made no inquiries of any one about it. No one testifies to ever having seen it in her possession. Godleif Muehlhaeuser testifies to seeing the deed in Mrs. Margarette Blum's possession during the time defendant resided upon the place. The question of the delivery of the deed was submitted to a jury in a suit in ejectment brought by Mary Bush against Frederick G. Blum (the complainant), and they found that it was delivered. Whether additional testimony upon the point is contained in this record than was submitted for the consideration of the jury we do not know.

It appears that, prior to the time when Mary Bush and her husband moved upon the premises in question, Henry Blum, Sr., had loaned to George Bush $500, for which he held his note; and it also appears that on the 26th day of April, 1886, Henry Blum, Sr., loaned to George Bush and Mary Bush $500, and to secure the payment thereof five years from that date, with interest at 6 per cent. yearly, they executed and delivered to Henry Blum, Sr., their note and indenture of mortgage upon their farm in the township of Sterling, which mortgage was recorded on the 26th day of October, 1886, in Liber 72 of Mortgages, on page 1, in the office of the register of deeds of Macomb county. George Bush testified that

86 MICH—14.

the reason why he borrowed the last $500 was that, on account of his moving upon the land with his wife, he was obliged "to buy one horse more, and all his machinery, to start down there with." It also appeared that Bush left his son upon his place in Sterling, which consisted of about 104 acres.

George and Mary Bush lived in the house with Henry Blum, Sr., and his wife a little over a year. George Bush worked the farm, and in the fall of 1886 sowed winter wheat upon the place. Mary cared for her father and mother, but matters did not progress smoothly in the families, and the minister was called upon to settle up differences and make peace. The parties belonged to the Evangelical Lutheran Church, and it was upon the occasion of one of these visits that Mrs. Blum showed Mr. Muehlhaeuser, the minister, the deed she had in her possession, heretofore referred to. The daughter disagreed with her mother. In plain English, they quarrelled more or less, until finally Mary Bush left the place, and went to her former home in Sterling, taking with her part of her household goods. She left her daughter, who remained some three or four weeks longer; and Mr. Bush remained while he marketed his produce, when he removed everything from the place, including stoves and furniture, and with the last load took his daughter home, leaving these aged and nearly blind people alone in the house, and, as they claim, without wood, or suitable provisions to eat, and no one to cook for them. This was in December. In this extremity Mr. Blum sent for his son Henry, who came and brought provisions, and supplied them with fuel, and shortly thereafter removed them to his own home.

The minister again tendered his kind offices to bring about a reconciliation in the family. Bush and wife felt

aggrieved at being put to the expense and trouble of moving to and from the place, and at the minister's suggestion arbitrators were chosen to settle all difficulties, who met the parties at the house of Henry Blum, Jr., in the month of January, 1887, where a full and satisfactory settlement was had. Henry Blum, Sr., was to surrender to George Bush the two notes he held, amounting, with interest, to nearly $1,100, and Bush was to have the right to harvest the wheat he had sown upon the place, and Blum was to discharge the mortgage. With the terms of this settlement all expressed themselves satisfied. Henry Blum, Sr., at that time surrendered to George Bush the unsecured note, and delivered him the mortgage. The mortgage note, for some reason not satisfactorily explained, was not handed over at that time, but it was agreed that it should be, and the mortgage discharged. The testimony is very convincing that this was a full settlement of all differences between Henry Blum, Sr., and his wife upon one side, and George and Mary Bush on the other.

Henry Blum, Sr., regarding the arrangement with his daughter at an end, entered into a new agreement with his son Henry for the care and support of himself and wife. On the 24th of February, 1887, Henry Blum, Sr., and his wife executed to Henry Blum, Jr., a warranty deed of the 30 acres, in which, after the description, is inserted the following clause:

"And as a further consideration the said party of the second part promises and hereby binds himself to support and decently keep each of the said parties of the first part during their natural life-time."

This deed was recorded February 28, 1887. Afterwards, and on the 6th day of April, 1887, Henry Blum, Jr., and his wife, Sarah, conveyed the same premises to Frederick G. Blum (the complainant) by warranty deed,

and he immediately went into possession of the same. He claims to have purchased in reliance upon the record title, and without any notice of any title, claim, or demand of Mary Bush or George Bush in or to the land or crop of wheat growing thereon. When the wheat was fit for the harvest, he cut and threshed it, and denied any right of George Bush thereto. The consequence was a suit brought by George Bush for the value of the wheat. This suit was settled, and Henry Blum, Sr., furnished the money to pay Bush for the wheat. Mary Bush then brought ejectment, claiming title under the aforesaid deed, and recovered judgment.

Complainant then filed this bill of complaint. Answer was filed, and issue joined, and proofs were taken in open court. Upon final hearing the court decreed that Mary Bush had abandoned her said undertaking and agreement to support and maintain said Henry and Margarette Blum, and that she had been paid in full, and she had settled for the services, care, and support rendered, bestowed, and furnished by her and her husband; that complainant afterwards in good faith purchased the premises described in the deed, and went into possession, and now holds the same. He also decreed an injunction as prayed for in the bill, and declared, adjudged, and decreed that the title to the premises is in Frederick G. Blum, free and clear of any and all right, title, or claim of the said defendant, Mary Bush, or any other person claiming by, from, or under her, and directing her to convey to complainant.

We think the deed from Henry Blum, Sr., to Mary Bush must be construed as a conveyance upon condition, and that such condition was broken by Mary Bush when she abandoned the premises; that such was the mutual understanding when the settlement was had, she and her husband being recompensed for all the trouble, expense,

care, and support she or they had suffered and done on account of such deed; that the possession of Henry Blum, Sr., and his subsequent conveyance, constituted a sufficient entry for condition broken, and terminated the legal right of defendant under such deed; and that the settlement bars all equitable claims.

It is claimed by defendant that the deed of December 22, 1885, from her father to her, was executed without any security given back on her part to secure the performance of the consideration· for which the deed ˙was given. She might die, or convey the land away, or refuse or neglect to care for and maintain her father and mother, and he would have no redress except by treating the language made use of in the deed as a covenant. We had occasion to say in a somewhat similar case that—

"An unsecured agreement of this kind, in exchange for property of which a father denudes himself, is unconscionable, unless very evidently safe, as it certainly was not here." *Nolan v. Nolan,* 78 Mich. 24.

The construction of the language in the deed which accords with reason and justice is that which holds the grant of the land to depend upon the condition that the grantee shall give to the grantors full support and care during their natural lives. Such was clearly the intention of the parties to the instrument, and such intention should be given full force and effect. See, as bearing upon the question, *Horner v. Railway Co.,* 38 Wis. 165, where a clause in the deed stating the purpose for which it was given was held to be a condition subsequent. And see *Hunt v. Beeson,* 18 Ind. 380; *Marwick v. Andrews,* 25 Me. 525; *Horsey's Lessee v. Horsey,* 4 Har. (Del.) 517.

It is not a sufficient answer for her to say now or in her answer that she is still ready and willing to take said Henry Blum, Sr., and his wife to her husband's

home, and there care for ana support them. Such was not the arrangement she entered into. They were to remain in their own home, and receive care, attention, and support there. All the facts and circumstances and acts of the parties show such to have been the understanding of the parties.

We think the decree of the circuit court is right, and it is affirmed, with costs.

MORSE, McGRATH, and LONG, JJ., concurred. GRANT, J., did not sit.