## PIZARRO MANSFIELD AND HARRIET E. MANSFIELD v. CHARLES J. MANSFIELD AND IDA M. MANSFIELD.

*Deed—Agreement for life-support—Breach of condition.*

A clause in a life-lease executed by a son and his wife to his father and mother of land conveyed to the son in consideration of a life-support to be furnished the grantors, that "such care and provision [is] to be furnished them only in case they make their home with" the lessors, is construed, in view of the surrounding circumstances of the parties, as expressing an intention that the lessors make a home for the lessees on the land conveyed and covered by the life-lease; citing *Blum v. Bush*, 86 Mich. 206; *Bird v. Pope*, 73 Id. 483.

Appeal from Branch. (Loveridge, J.) Argued April 20, 1892. Decided June 10, 1892.

Bill to set aside a deed executed in consideration of life-support to be furnished the complainants. Defendants appeal. Decree affirmed. The facts are stated in the opinion.

*William H. Lockerby* and *Campbell & Johnson,* for complainants.

*Ware & Palmer,* for defendants, contended:

1. The parties deliberately and understandingly executed the instrument in question, and without any fraud, imposition, or mistake being practiced by either of them, and they were not mistaken as to its terms, and neither party should be permitted to insist that the instrument does not express the real intention of the parties; citing *Adair v. Adair,* 5 Mich. 209; *Abell v. Munson,* 18 Id. 311.

2. The bill is not one to reform the contract made by the parties, and, even if it were, there is no proof on the record to warrant the court in reforming it as the complainants ask; citing *Vary v. Shea,* 36 Mich. 383.

3. An equity against the express words of a contract, where neither want of capacity, illegality, fraud, nor mistake is shown in the making of it, can never be recognized; citing *Adair v. Adair,* 5 Mich. 209; *White v. Railway Co.,* 13 Id. 356; *Van Donge v. Van Donge,* 23 Id. 321; *Fraser v. Fraser,* 42 Id. 281.

MONTGOMERY, J. This cause was tried before the Honorable NOAH P. LOVERIDGE, circuit judge, and the facts in the case, as well as the conclusions which we have reached, may best be understood by quoting from his opinion as follows:

"The bill of complaint is filed in this case to set aside and have declared void a deed for fifty-two and one-half acres of land, particularly described in the bill, made by the complainants to the defendants on the 18th day of May, 1887. The consideration of such convey-.

ance, as expressed in the contemporaneous agreement, was the support and care during life of the complainants, and providing them suitable and sufficient food, clothing, necessary medical attendance, proper care and nursing, and such other things as should be necessary for the comfort and well-being of complainants. By the same written agreement the defendants leased to the complainants for life the premises conveyed. The complainant Pizarro Mansfield is 76 years old, and his wife is 70.

" At the time of making such conveyance and agreement the complainants were the owners and possessed of a good farm of 145 acres, with a good dwelling-house and necessary barns and buildings thereon. Such farm was unincumbered. There was the ordinary stock and personal property upon it, owned by the complainants; and in their pecuniary situation they were well-to-do people. They have four grown-up children. Some months prior to the making of such deed and contract the defendants had moved to complainants' farm, and at the time that such instruments were made were living with them under a verbal agreement to live there and work the farm upon shares for one year. The parties continued to live together upon such premises, the verbal agreement being renewed from year to year, defendants cultivating the farm, and complainants assisting about the work, for about three years after the making of the written agreement and deed. At the expiration of that time the parties were unable to agree upon the terms of a renewal of the verbal agreement, and the defendants subsequently moved from such premises some three miles away to a farm owned and possessed by them. At and before the time they so moved the defendant Charles J. invited and offered to remove the complainants to the defendants' said farm, and to care for and support them there, claiming to act under the terms of said written agreement.     *     *     *     *     *     *     *     *     *     *     *

" While I am of the opinion that the defendants did not in all respects provide the complainants with suitable clothing, medical attendance, and care necessary for their comfort and well-being, yet my decision is based mainly upon the construction of the last clause of the written agreement of May 18, 1887, viz.: ' Such care and provision to be furnished them only in case they make their

home with said parties of the first part.' There is no controversy as to the practical construction which the' defendants placed upon that clause. They took the advice of counsel, and deliberately determined that no obligation rested upon them to support and maintain the complainants except at the place and domicile where they, the defendants, might choose thereafter to reside. After removing to their own farm, the complainants refusing to go with them, they entirely disregarded the provisions of the agreement as to care and support, and ceased all intercourse with them. They aver in their answer that they are willing to provide the complainants with all the things mentioned in said written agreement, and to allow them the use of the lands in controversy, 'provided they will and do make their home with these defendants;' but they deny that they 'ever agreed to remain, live with, and care for the complainants upon the premises so conveyed to them, and at the same time to allow the complainants to have the proceeds of said premises.' The defendants claim that the verbal agreement made in December, 1886, relating to the cultivation of complainants' farm, and renewed from year to year during the three years they lived together, formed a part of such written agreement; and they claim that they are not bound to support them (complainants) upon the premises in question unless they themselves are permitted to live there and have complainants' lands to work.

"The construction of the contract between the parties is not without difficulty. It is one of that class of unfortunate contracts so often entered into between aged parents and children for support and maintenance. * * * The defendants seem to place their rights squarely upon the claim that they are under no legal obligation to support the complainants except at such place as they shall select; and, in my view of the case, it remains only to determine whether that construction is correct.

"The fifty-two and one-half acres conveyed to defendants constituted a valuable part of the complainants' farm of 145 acres. The dwelling-house and buildings, which were valuable, were upon the part so conveyed. Considering the age of the complainants, the consideration for their support, independent of the use of the premises in controversy, seems to have been ample. At the time the deed and contract were made all of the parties were living upon the premises. The complainants had lived

there some twenty-seven years. They had erected the dwelling-house and buildings and made the improvements upon the farm. Their attachment to the farm which they had acquired, cleared, and improved, and which had been their home for so many years, was undoubtedly strong, and at their age to have removed them to a new home and a new neighborhood could have been little less than cruelty. Such a removal does not seem to have been contemplated by any of the parties at the time the agreement was entered into. At that time, as before stated, all the parties lived together upon the prem'ses in question, and there existed a verbal agreement between them for working the farm upon shares. Quite likely the parties then believed that such an arrangement would continue indefinitely. In fact it did continue for three years. As before stated, the defendants took the risk of the continuance of such arrangement, and did not protect themselves against its rupture.

" Connected with the fifty-two and one-half acres in controversy was the rema'nder of the complainants' farm of nearly one hundred acres, and the fair presumption is that their residence upon the part in question was essential to care and use of the part of the farm not conveyed. Their residence there was also essential to the full enjoyment of the use of the fifty-two and a half acres so reserved by the life-lease. If the defendants fairly performed their agreement to support the complainants, it may not have been very important that the complainants should derive an income from the farm. Yet it must be borne in mind that they had other children, for whom it must be presumed they were as solicitous to provide as for the defendants. The fact that the complainants reserved by the life-lease the use of the homestead is persuasive evidence that they intended to live there during the few years that might remain to them. And such I cannot but believe was the intention of all the parties to the agreement.

"The fair construction to be placed upon the last clause of the agreement is that the parties intended to provide against supporting the complainants at some place other than the homestead, and thereby involve them in what might be a large expense. This seems to have been the interpretation intended by the person who drafted the agreement, and who heard the statement of the parties."

This conclusion of the learned circuit judge that the clause in the lease which reads, "such care and provision to be furnished them only in case they make their home with said parties of the first part," should be considered with reference to the surrounding circumstances of the parties, and so construed expresses an intention that the defendants shall make a home for complainants on the lands conveyed and covered by the life-lease, is fully supported by the rulings of this Court in similar cases. *Blum v. Bush*, 86 Mich. 206; *Bird v. Pope*, 73 Id. 483. In *Blum v. Bush* the proviso in the deed was:

"This deed is given for the full support and care of parties of the first part during their natural life-time."

There was no agreement as to where the support should be given to the grantors, but the Court say:

"The construction of the language in the deed which accords with reason and justice is that which holds the grant of the land to depend upon the condition that the grantee shall give to the grantors full support and care during their natural lives. Such was clearly the intention of the parties to the instrument, and such intention should be given full force and effect. * * * It is not a sufficient answer for her to say now that she is still ready and willing to take Henry Blum, Sr., and his wife to her husband's home, and there care for and support them. Such was not the arrangement she entered into. They were to remain in their own home, and receive care, attention, and support there. All the facts and circumstances and acts of the parties show such to have been the understanding of the parties."

In the present case the circumstances, as detailed in the opinion of the learned circuit judge, are quite as persuasive evidence that these old people did not intend to and were not expected to abandon their home and live elsewhere.

The decree should be affirmed, with costs.

McGRATH, LONG, and GRANT, JJ., concurred. MORSE, C. J., did not sit.