REBECCA H. KILPATRICK ET AL. *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Condition Subsequent in a Deed.—Conveyance of Land for a Street.— Forfeiture.*

A deed will not be construed as being upon a condition subsequent,. solely because it contains a clause declaring the purpose for which the land conveyed shall be used, when such purpose will not enure especially to the benefit of the grantor, and when there are no other words indicating an intent that the grant is to be void if the purpose is not carried out.

If it be doubtful whether a clause in a deed is a covenant or a condition subsequent, the disposition of the Courts is to construe the language as creating a covenant or trust rather than a condition.

An ordinance of the Mayor and City Council of Baltimore directed the Comptroller to acquire certain property for public use. This property was a triangular piece of land, vacant and with no streets passing through it. A deed was executed conveying to the city a part of said land in fee, the *habendum* clause containing the words, "as and for a street to be kept as a public highway." All of the land was used by the city for nearly twenty years as a public square and not as a street. If the part of the land conveyed by this deed were used as a street, the rest of the property would be incapable of improvement as a public square, as provided by the ordinance; and no ordinance ever authorized it to be purchased or accepted as and for a street. In an action of ejectment by the grantors in said deed to recover said land, *Held*, that the words in the *habendum* clause did not create a condition subsequent and work a forfeiture of the land to the grantors upon the failure of the grantee to use the same as a public street.

Appeal from a *pro forma* judgment of the Superior Court of Baltimore City for the appellee in an action of ejectment brought by the appellants. The agreed statement of facts showed that the land described in the declaration in this cause is at present a portion or part of Perkins' Spring Square, formerly called Perkins' Spring property, which land, described in the said declaration, is now and and has been ever since the 14th January, 1873, used by

the city of Baltimore in connection with the property leased
by it on the said 14th January, 1873, as per Exhibit B, as
one of the public squares of the defendant, situated within
the limits of the city of Baltimore.    That the land described
in the said declaration, although conveyed to the city on the
11th January, 1873, by deed marked "Exhibit A," has been
in the possession and used by the defendant as a portion of
said square, adversely, openly and continuously, the said
defendant claiming the title and right to use the same as a
part of the said square ever since the said 14th January,
1873.    That said square, as now used, consists of a tri-
angular piece or parcel of land, including the land de-
scribed in said declaration, except a small rectangular area
of land 95 by 106 feet, which was leased prior to the 16th
October, 1872, by the plaintiffs, to certain persons, for
building purposes, and which fronted on George street.
That said triangular piece or parcel of land, including the
land described in the said declaration forming said square,
is bounded on the west by Ogston street, on the south by
George street, and on the northeast by Myrtle avenue, for-
merly Chatsworth street, and on the 11th and 14th Janu-
ary, 1873, it was a vacant lot with no street passing through
it and no improvements on it.    That the land described in
said declaration passes from east to west through the north-
ern half of said triangular piece or parcel of land, and
since, and a short time after the said 14th January, 1873,
has been permanently improved by the defendant by the
construction of expensive serpentine cement paved ways,
for foot-passengers and travelers, running at oblique angles
through said square from Ogston street to Myrtle avenue,
with a large mound of earth in the centre of said land de-
scribed in the declaration, ornamented and embellished with
receptacles for flowers.    That if the land described in said
declaration had been, on the 14th January. 1873, or was
now, or heretofore or hereafter, used "as and for a street, to
be kept as a public highway," such use would render said
triangular piece or parcel of land incapable of improvement
as a public square, as provided in the ordinance of 1872.

The triangular piece of land in question was acquired under a resolution of the City Council passed October 16, 1872, as follows:

"Resolved by the Mayor and City Council of Baltimore, That the City Comptroller be, and he is hereby authorized and directed to lease, for public use, all that portion of the Perkins' Spring property within the following bounds, not leased, on the west side of Ogston street, on the south by George street, and on the northeast by Myrtle avenue, formerly Chatsworth street, at a rate not to exceed four dollars and a half per front foot, for the building lots contained within said bounds, and with the right reserved to purchase at six per cent. capitalized, at the convenience of the city."

The City Comptroller, in compliance with the mandate of said Resolution No. 300, acquired for the city the fee-simple title to the land described in said resolution by the following conveyances, dated and designated as follows: Exhibit A, January 11th, 1873. A deed in fee-simple for a small portion in the northern half of the land which was described in Resolution 300, and being the land which this action of ejectment is brought to recover. This deed in its granting clause or premises conveys a fee-simple estate, and in its *habendum* adds these words, "*as and for a street, to be kept as a public highway.*" Exhibit B, January 14, 1873. A lease for the remainder of the land described in Resolution No. 300. This conveyance leased to the city for ninety-nine years, renewable forever, the land therein described, with the right reserved to purchase the fee at six per cent. Exhibit C, October 31, 1881. A deed in fee-simple for the land leased in "Exhibit B."

The cause was argued before BRYAN, McSHERRY, FOWLER, BRISCOE, PAGE and ROBERTS, JJ.

*John V. L. Findlay* and *Thomas Mackenzie* (with whom were *Harry M. Benzinger* and *James S. Calwell* on the brief), for the appellants.

The conveyance of January 11th, 1873, (Exhibit "A"), was for a special purpose, to-wit, " as and for a street to be kept as a public highway," and that purpose being embodied in the deed as one of its conditions, the Mayor and City Council, had it accepted the deed, must have taken the title subject to the conditions.    Generally, persons accepting the terms of deeds must accept the same as a whole, and cannot accept part and reject the rest.    *Big. on Estop.*, page 684 and note 4 ; *Dillon on Mun. Corp.*, section 575.    Had the Mayor and City Council condemned this strip of land, an easement would have met the purpose for which it was taken as well as a fee, and it would have acquired, therefore, not an absolute unqualified fee, but only such a use as was consistent with the object for which it was taken. *Dillon on Mun. Corp.*, section 603 ; *Kane* v. *M. & C. C.* 15 Md. 249 ; *Mayor* v. *Bouldin*, 23 Md. 373. It was, therefore, not necessary for the defendant to have a fee-simple estate, and as it appears from the terms of the deed itself, that there was a condition attached to the grant, it necessarily follows that the intention was not to grant a fee. Vol. 1, Article 21, section 11, P. G. L. (Code 1888) ; *Hawkins* v. *Chapman*, 36 Md. 83 (94) ; *Foos* v. *Scharf*, 55 Md. 311.

A grantee must use the land in strict conformity with the uses expressed in the deed.    And the defendant in this case, having failed to use the land in accordance with the terms of the deed and the conditions contained therein, the plaintiffs are entitled to have and possess the same.    *Reed* v. *Stouffer*, 56 Md. 238 ; *Second Univ. Church* v. *Dugan*, 65 Md. 464 ; *Kelso* v. *Stigar*, 75 Md. 386 ; *Heard* v. *City of Brooklyn*, 60 N. Y. 246.

The decision of this case rests necessarily upon the construction to be placed upon the deed of 11th January, 1873, (Exhibit "A"), more than upon the other branch of the case, and in order to arrive at the true meaning of that deed, let us bear in mind these cardinal principles of construction.    1st. If possible, all parts of a deed must be given their full effect, so that, 2d. The intention of the

parties may govern and be carried out if possible, and, 3d. Unless there is a clear conflict or repugnancy between the premises and the *habendum* of a deed, the rule which permits the *habendum* to be ignored cannot be applied.

In this case it is clear that the plaintiffs intended to give the strip of land for the purposes of a street, and that it should be opened as a street and kept as a public highway, otherwise, why insert such a provision in the deed or execute the deed three days before the lease? If the plaintiffs had intended that the strip should be used as a park, why was it not included in the lease itself? In the one instance they *gave* it for a public highway without consideration, in the other the city would have paid for it at the rate of $4.50 per front foot, capitalized at 6 per cent. If such is the intention to be gathered from the deed, then the Court will so construe the deed as to carry that intention into effect. *Matthews* v. *Ward*, 10 G. & J. 443 ; *Ware* v. *Richardson*, 3 Md. 505 (553) ; *Albert* v. *Thomas*, 73 Md. 181 ; *Martindale on Conv.*, page 90, page 101 ; 23 Me. 217 ; 70 Pa. 238 ; 38 N. H. 212 (218) ; *Flaten* v. *Moreland*, 19 L. R. A. 195 ; *Robinson* v. *R. R.*, 59 Vt. 426 ; *Winter* v. *White*, 70 Md. 341 ; *Handy* v. *McKim*, 64 Md. 565.

In *2d Univ. So.* v. *Dugan*, 65 Md. 471, the deeds were somewhat similar in their granting clause to the deed in case at bar, although they included the term "bargain and sell," and only in the *habendum* do we find the use for which the grant is made. Yet here the Court of Appeals construed the two clauses as not inconsistent, and allowed the intention as gathered from the *habendum* to control the construction. As it is contended it should do in this case. The *habendum* describes, limits and defines the estate granted. See *Bouv. Law. Dic* , title "Deed ;" *Am. & Eng. Enc. Law*, 5th vol. page 457. The *habendum* is potent in rebutting any implication arising from silence in the premises as to the *quantum* of estate granted. *Kent*, volume IV, section 67, title, "*Habendum;*" 3 *Wash. R. P.*, page 440. There are no implied covenants in a deed which will be

considered as against the express covenants now.   *Glenn* v.
*M. & C. C.*, etc., 67 Md. pages 390-399 ; *Morris* v. *Harris*,
9 Gill, page 27.

*Thomas G. Hayes, City Counsellor*, for the appellee.

The granting clause of "Exhibit A," by the words "do
grant unto the Mayor and City Council of Baltimore and its
successors," conveys to said city a fee simple estate, and if
the words in *habendum*, "as and for a street to be kept as a
public highway," are words of condition subsequent, which,
if operative and effective would create a base or defeasible
fee upon a breach of which a forfeiture and reverter would
occur in favor of the grantors, then these words occurring
in the *habendum* would create a repugnancy between it and
the estate conveyed in the granting clause, and be inopera-
tive in so far as these words limited or diminished the fee
simple estate previously granted.

The words "do grant unto the Mayor and City Council
of Baltimore and its successors," convey a fee simple estate
to the appellee, a corporation aggregate.   1 *Wash. R. P.*
sec. 62, page 90 ; *A. & A. Corp.*, chap. 5, sec. 172; 6 *A.
& E. Ency. Law*, 876, "Estates ;" *Comyn's Digest Estate
A*, 2, 215 ; 2 *Preston on Estate*, 1, *page 7 ; *Cong. Society*
v. *Stark*, 34 Vt. 243 ; *Nicol* v. *N. Y., &c. R. Co.*, 12 N.
Y. 121.

The *habendum* of a deed must give way if in conflict with
or repugnant to the granting clause of a deed.   *Budd* v.
*Brooke*, 3 Gill, 198 ; *Farquason* v. *Eichelberger*, 15 Md. 63;
*Winter* v. *Gorsuch*, 51 Md. 186.

The words "as and for a street to be kept as a public
highway," occurring in the *habendum*, do not in themselves
create a condition subsequent, but are only at best the
declaration of a use, a covenant or trust, a breach of which
works no forfeiture and reverter in favor of the grantors,
but only a liability on the part of the grantee to an action
of damages for the misuse or breach of the use, covenant or
trust aforesaid.   As preliminary to the consideration of the

question as to whether the words in the *habendum* of "Exhibit A" create a condition subsequent, it may be well to consider certain universally received canons of construction relating to conditions subsequent, which the Courts follow as aids in arriving at a conclusion as to whether any given words create a condition subsequent.

A condition subsequent is never favored, because it works a forfeiture, and forfeitures, both in law and equity, are "odious."   4 *Kent*, 125, 130, 132 ; *Stanley* v. *Colt*, 5 Wall. 119 ; *Passchall* v. *Passmore*, 15 Pa. St. 295, 307 ; *Farnham* v. *Thompson*, 34 Minn. 330 ; *Brantly's Note to Earle* v. *Dawes*, 3 Md. Ch. 230.

The mere declaration of the *uses* to which the granted premises are to be applied do not ordinarily import a condition.   *Gobert* v. *Olcott* (Tex.) 23 S. W. Rep., 985 ; *Packard* v. *Ames*, 16 Gray, 327 ; *Rawson* v. *Uxbridge*, 7 Allen, 129, 130 ; *Heaston* v. *Randolph Co. Com.*, 20 Ind. 398.

Where the *use* or *purpose* declared in the deed is not for the special benefit of the grantor, but for the *public at large*, the Courts are not inclined to treat the words as creating a condition subsequent.   *Gobert* v. *Olcott* (Tex.) 23 S. W. Rep. 985 ; *Packard* v. *Ames*, 16 Gray, 327 ; *Rawson* v. *Uxbridge*, 7 Allen, 129, 130.

Among the many American cases in which words in deeds have been held not to create conditions subsequent, the following may be considered the leading ones, and as will be seen, they establish beyond doubt that the principles of law as stated in all of these cases, forbid that the words " *as and for a street to be kept as a public highway* " could or should be ever held to create a condition subsequent with the incident forfeiture and reverter.   In the list it will be seen two Maryland cases are given which follow the principles as announced in the cases given from other States and Federal Courts.   *Green* v. *O'Connor*, 18 R. I. 1, 25 Atl. Rep. 692 ; *Rawson* v. *Uxbridge*, 7 Allen, 129 (Mass.) ; *Packard* v. *Ames*, 16 Gray, 327 (Mass.) ; *Thornton* v. *Trammel*, 39 Ga. 209 ; *Paschall* v. *Passmore*, 15 Pa. St. 295 ;

*Laberee* v. *Carlton,* 53 Me. 211 ; *Gadberry* v. *Sheppard,* 27
·Miss. 203 ; *Gobert* v. *Olcott* (Tex.) 23 S. W. Rep. 985 ;
*Farnham* v. *Thompson,* 34 Minn. 330, 26 N. W. Rep. 9 ;
*Summer* v. *Darnell,* 128 Ind. 38, 13 L. R. A. 173 (note) ;
*Hague* v. *Ahrens,* 3 U. S. App. 244 ; *Stanley* v. *Colt,* 5 Wall.
119 ; *Stewart* v. *Redditt,* 3 Md. 71 ; *Newbold* v. *Glenn,* 67
Md. 490.

In *Green* v. *O' Conner, supra,* the facts were quite similar
to the case at bar.  The words in the deed in that case,
which were claimed to create a condition subsequent, were:
"*This conveyance is made upon the condition that the said
strip of land shall be forever kept open and used as a public
highway, and for no other purpose.*"  The Supreme Court
of Rhode Island, in speaking of these words, said: "Nor do
we think that the clause quoted created a condition subse-
quent.  Conditions subsequent, as is well understood, are
not favored in the law.  A deed will not be construed to
create an estate on condition unless language is used which,
according to the rules of law, *ex proprio vigore,* imports a
condition, or the intent of the grantor to make a condi-
tional estate is otherwise clearly and unequivocally indi-
cated.  If it be *doubtful* whether a clause in a deed be a
covenant or a condition, Courts will always lean against the
latter construction."

In *Rawson* v. *Uxbridge, supra,* the words claimed to
create a condition subsequent, were the following: "*To have
and to hold the said given and granted premises with all ye
appur' ces, privileges and commodities to the same belonging,
or in anywise appertaining to the said town of Uxbridge, for-
ever, to their only proper use, benefit and behoofe for a bury-
ing place forever.*"  The Court held the above words not
to create a condition subsequent.

In *Packard* v. *Ames, supra,* the words used in the deed
of a grant of land to a religious society to build a meeting-
house, there was in the *habendum* these words : "*Each and
every lawful owner and proprietor of a pew or pews in the
meeting-house to be built and rebuilt on the said lot of land*

*forever.*" The Supreme Court of Massachusetts, as to these words, says: "There are no apt or proper words to create a condition. The only words which bear any semblance of an intent to restrict the title conveyed by the deed, are found in the *habendum.* These are merely that the grantees, the proprietors of pews, should hold the estate for the purpose of erecting and maintaining thereon a house for public worship. But we know of no authority by which a grant declared to be for a special purpose, without other words, can be held to be on condition. On the contrary, it has always been held that such a grant does not convey a conditional estate, unless coupled with a clause for the payment of money, or the doing of some act by the grantee on which the grant is clearly made to depend. Without some such clause, a grant for a specific purpose can be held at most only to create a trust, but not an estate on condition."

In *Thornton* v. *Trammel, supra,* the words construed were: "*It being expressly understood by the parties that the said tract or parcel of land is not to be put to any other use than that of a depot square, and that no business or improvements are to be put on the said tract but those which are immediately connected with the Western and Atlantic Railroad.*" It was held that these words did not create a condition subsequent.

In *Paschall* v. *Passmore, supra,* the words claimed to create a condition subsequent related to a bridge to be kept by us, and was as follows: "Under this condition, nevertheless, that the grantee, in consideration thereof, do, at his and their own cost, erect and always keep in repair a sufficient bridge over the place where the most water shall run, so that the grantees, &c., may at all times commodiously pass and repass over the same with horses and wagons, workmen, tools, &c., for all and every use and purpose whatsoever."

The Court, as to these words, said: "We are thus reduced to the naked inquiry whether the words 'under this

condition, nevertheless,' of themselves create a condition destructive of the interest reserved because of its non-performance ?   *   *   I think it is clear, that under the most stringent application of common law principles, no technical condition can be extracted from the language of the deed before us.   In the endeavor to ascertain its legal effect, the plaintiff is entitled to the benefit of the maxim which declares condition to defeat an estate *odious,* and that they are to be taken most strictly."

In *Laberee* v. *Carlton, supra,* the words construed in the deed were: " Provided, nevertheless, that if the following conditions and things shall be duly and fully performed by me, the said Miles, that is to say, that whereas, for services had and received by me, the said Miles, and divers good considerations moving me thereunto, if the said Miles shall well and truly find, provide for, maintain and support my father, the said Seth, and my mother, Susan, &c., during their natural lives, &c., then the aforesaid deed shall become void, otherwise, &c."   The Court says, in its opinion, as to these words : " It is also a fundamental principle that a condition is a qualification or restriction annexed to a conveyance.   The words must not only be such as of themselves import a condition, *but must be so connected with the grant in the deed as to qualify or restrain it.*   Neither of these requirements appear to be complied with in the deed under consideration."

In *Gadberry* v. *Sheppard, supra,* the consideration was nominal, and the words in deed were : " *The same being for the use and benefit of said town of Benton.*"   The Court, in construing these words, said : " These words do not contain any express condition, nor do they import a defeasible estate, and it would be impossible to determine from them what condition was required to be performed."

In *Gobert* v. *Olcott, supra,* a lot of ground was conveyed for a nominal consideration to C. M. Dubois, Bishop of Galveston, as stated in the premises, "*for the benefit of the Roman Catholic Church:*" and in the *habendum* it was pro-

vided that the land was to be held "*unto the said C. M. Dubois, Bishop of Galveston, for the use aforesaid, and to his successors and assigns.*" The Court, in speaking of these words, said: "We are of the opinion that the grantee took under the deed a fee-simple title in trust for the benefit of the church, whose officer he was. There are no conditions subsequent expressed, and although they may be implied, they are not favored in law."

In the case of *Farnham* v. *Thompson, supra,* the words claimed to create a condition subsequent, were: "*For the purpose of erecting a church thereon* only." The Court held that these words did not create a condition subsequent.

In *Hague* v. *Ahrens,* the words were: "*This lease not to be sold, assigned or transferred, without the written consent of the party of the first part.*" The United States Circuit Court of Appeals, speaking of these words, said: "The law regards conditions with the same disfavor it does forfeitures, and for similar reasons. A clause will not, therefore, be treated as a condition, if it can be construed as a covenant, without violence to its terms. If the purpose to create a condition or conditional limitation is not expressed in clear and unequivocal language, as the Courts have frequently said, in 'apt terms,' such as 'upon condition,' 'provided, nevertheless,' 'so long as,' 'during,' &c., the clause will be treated as a covenant simply. The provision under consideration does not contain such language."

In *Stanley* v. *Colt, supra,* the words of the will which were claimed to create condition, were: "*Provided, that said real estate be not ever hereafter sold or disposed of, but the same be leased or let, and the annual rents or profits thereof applied to the use and benefit of said society, and the letting, leasing and managing of said estate to be under the management and direction of certain trustees hereafter named by me, and their successors to be appointed in manner as hereafter directed.*

The Supreme Court of the United States held that these words did not create a condition.

In ascertaining whether the words "as and for a street to

be kept as a public highway" create a condition subsequent, the intention of the grantors is controlling. (*a.*) The resolution in question. (*b.*) The incapacity of the appellee to take the land in question for a street, but only for a part of a public square, under the express provisions of said resolution. (*c.*) The recitals in "Exhibit B" made three days after "Exhibit A." (*d.*) And all the surrounding facts conclusively show that it was not the intention of the grantors in "Exhibit A," by the use of these words, to create a condition subsequent.

The facts set out in the agreed statement conclusively show a waiver, by appellants, of any forfeiture which might have occurred, by reason of a breach of the condition subsequent (if any such condition existed in the words found in the *habendum*), under "Exhibit A." The facts need not be again repeated in this brief; they show a knowledge and acquiescence for 20 years, less four days, in the use of the land in question, for a part of Perkins' Spring Square, during which time large expenditure of money was made on the very land described in "Exhibit A," in permanent improvements, solely suited to a public square, with the full knowledge of appellants, and no word of warning or objection was ever made by them to the said use, or any claim set up of a misuse or forfeiture, until the institution of this suit of ejectment. This question of waiver of a forfeiture under a condition subsequent has been, in a recent case, ably and fully discussed by the Supreme Court of Oregon. The Court says: "A person will not be allowed to avail himself of a forfeiture of valuable rights, unless he claims it immediately on the happening of the condition upon which it depends. He cannot remain passive in such a case for a long time, after acts have transpired upon which others have relied in matters of importance to them, and then enforce a forfeiture in consequence thereof." *Huston* v. *Bybee*, 17 Or. 140, 2 L. R. A. 568.

PAGE, J., delivered the opinion of the Court.

This is an action of ejectment brought by the appellant to recover from the appellee a strip of land running through Perkins' Spring property in the city of Baltimore. The case was heard below upon an agreed statement of facts, and from the *pro forma* judgment thereupon rendered, this appeal is taken.

On the 16th day of October, 1872, the Mayor and City Council of Baltimore passed a resolution authorizing and directing the City Comptroller to lease *"for public use"* all that portion of the Perkins Spring property located within the bounds of Ogston, George and Chatsworth streets, (except a portion theretofore leased) "at a rate not to exceed four dollars and a-half per front foot, for the building lots contained within said bounds," with the right reserved "to purchase at six per cent. capitalized, at the convenience of the city." The land described in this resolution was conveyed to the city in separate parcels, by two deeds dated respectively the eleventh day of January, 1873, and the fourteenth day of January of the same year. These deeds were submitted to and approved by the City Solicitor at the same time, that is to say, on the fourth day of January. By the deed of the fourteenth day of January, the grantors, first having set out the resolution above cited, lease to the city for ninety-nine years, renewable forever, with the right reserved to purchase the fee, all of the ground mentioned in the resolution, except so much thereof as constituted Clark street, which was granted by the deed of the eleventh of January, to the city *"in fee simple."* Clark street, thus referred to, did not in fact exist; it was only the strip of land running from Ogston to Chatsworth street, sixty-feet wide, which the grantors by the deed of the 11th of January had, in consideration of one dollar, granted unto the "Mayor and City Council of Baltimore and its successors," with an *habendum* clause as follows: "To have and to hold the parcel of ground above described, with the appurtenances aforesaid, unto the Mayor and City Council of Baltimore, aforesaid, and its successors

forever, as and for a street to be kept as a public highway." Upon the execution and delivery of these deeds, the city took possession of the property, and since then has used it as a part of Perkins' Spring Square. It has expended large sums of money in improving it, by the construction of expensive paved ways for persons using the square, and of a large mound of earth in the centre, ornamented and embellished with receptacles for flowers.

No ordinance or resolution was ever passed by the Mayor and City Council authorizing the purchase of the land mentioned in the declaration as a public highway, or accepting it as such; on the contrary, if it should be used as a street, such use would render the triangular parcel incapable of improvement as a public square, as provided by the ordinance or resolution of 1872. It is agreed by the parties that the Court shall draw such inferences of law or fact from the "statement of facts and exhibits as may be right and proper, and all questions of law, as well as inferences that might have been made in the Court below, shall be open for consideration and decision by this Court."

Under these circumstances the appellant contends that the deed of the 11th of January, 1873, was made for the purpose of opening and forever keeping open Clark street, from Ogston to Chatsworth, as a public highway; that the words, "as and for a street to be kept as a public highway," found in the *habendum*, create a condition, and as the city has failed to use the land in accordance with this condition, a forfeiture has occurred, and the title has reverted to the grantors. To sustain this contention, it obviously is necessary to determine that the words in themselves import a condition, or when taken in connection with the whole deed, that they show a clear and unmistakable intention on the part of the grantor to grant an estate on condition. Technical words are not absolutely essential to create a condition, nor on the other hand does their use necessarily raise one; such words may be controlled by the context of the instrument in which they are used, so that sometimes they work

a limitation and condition, and sometimes a covenant or a trust only.   *Paschal* v. *Passmore*, 15 Pa. St. 295 ; *Bacon* v. *Huntington*, 14 Conn. 92 ; *Lessee of Worman* v. *Teagardeu*, 2 Ohio St. 380; *Waters* v. *Bredin*, 70 Pa. St. 235; *Laberee* v. *Carlton*, 53 Me. 211.

Conditions subsequent are not favored in law "because on breach of such conditions there is a forfeiture, and the law is adverse to forfeitures."   4 *Kent*, 130 ; *Stanley* v. *Colt*, 5 Wallace, 119.   Therefore it is, that a condition will not be raised by implication, from a mere declaration in the deed, that the grant is made for a special and particular purpose without being coupled with words appropriate to make such a condition.   *Packard* v. *Ames*, 16 Gray, 327 ; *Bigelow* v. *Barr*, 4 Ohio, 358.

And as a further consequence of this rule, it has always been held that "in doubtful cases the disposition of the Courts is to construe language as creating a trust or covenant rather than a condition.   See *Earle* v. *Dawes*, 3 Md. Ch. Rep. 230 ; *Brantly's note* and authorities there cited; *Scovill* v. *McMahon*, 62 Conn. 378, 26 At. R. 481 ; *Greene* v. *O'Connor*, 18 R. I. 49, 25, At. R. 692 ; *Rawson* v. *Inhabitants, &c.*, 7 Allen, 128, 129.

In the elaborate and able opinion delivered in the last cited case by BIGELOW, C. J., the Court said: "If it be doubtful whether a clause in a deed be a covenant or condition, Courts of Law will always incline against the latter construction.   Conditions are not to be raised readily by inference or argument."   *    *   "We believe there is no authoritative sanction for the doctrine that a deed is to be construed a grant on a condition subsequent, solely for the reason that it contains a clause declaring the purpose for which it is intended the granted premises shall be used when such purpose will not enure specially to the benefit of the grantor and his assigns, but is in its nature general and public, and where there are no other words indicating an intent that the grant is to be void if the declared purpose is not fulfilled."

These principles, which, so far as our researches have gone, seem to be of universal acceptance, are fully sustained by the decisions of this Court. Without undertaking to review the cases in which questions of this nature have been considered, we deem it quite sufficient to refer to the case of *Newbold* v. *Glenn*, 67 Md. 490, in which Judge Robinson, speaking for the Court, has succinctly stated the whole law. There, in pursuance of an ordinance of the city the trustees of the McDonogh Educational Fund and Institute, bought of Wolfarden, a lot of ground as a site for the proposed McDonogh Institute. The deed recited the ordinance and conveyed the property to the city " in trust for the uses and purposes, and subject to the trusts, limitations, powers and provisions imposed, expressed and declared in and by the ordinance." Subsequently the city sold the property to William W. Glenn, and bought another, on which the buildings were erected. One of the questions involved was whether the city acquired an indefeasible fee-simple title or only a fee on condition subsequent that the property was to be used as a site for the institute, and on failure so to use it, there was a reverter to the grantor. It was held, however, the words relied on to establish the condition were used only " for showing the purpose for which the property was bought and the character in which it was held, and not for the purpose of limiting the right of alienation." It was also held there was nothing " to justify the inference that the property was sold or conveyed on condition that it was to be used as a site for the McDonogh Institute, and on failure thus to use it, the title was to revert to the vendor, * * * * and if such had been the intention, we must presume that it *would have been expressed in clear and explicit terms*, or in terms at least from which such intention could be fairly inferred." The Court also distinguished that case from those of *Reed, Howard et al.* v. *Stouffer*, 56 Md. 236, and of the *Second Univ. Soc.* v. *Dugan*, 65 Md. 460, in which it was held " on the express terms of the grant and the incapacity of the grantee to take

KILPATRICK vs. M. & C. C. OF BALTO.  195

Md.]                    Opinion of the Court.

upon any other conditions ; that upon the failure to use the property for the purposes in consideration of which it was conveyed, the title reverted to the grantor."

Applying these principles to the case at bar, we cannot find anything in the deed of the eleventh of January to justify the inference that the property was conveyed on condition that it was to be used as a public highway, and "on failure thus to use it, the title was to revert to the vendor." In the granting clause the property is conveyed absolutely to the city, and in the *habendum* are the words, "to have and to hold, &c., as and for a street to be kept as a public highway." These words do not *ex proprio vigore* import a condition, nor are they so connected with the grant itself, as in any manner to qualify the general terms there employed; and there is no such language to be found in the deed, from which, when the context is taken into consideration, an intention to create a condition can be inferred. The lot was acquired by the city under the authority of a resolution, which directed a lease "for public use," with the right reserved to purchase. It was part of the property included within what was called "the Perkins' Spring property;" and inasmuch, as the whole of the property was immediately upon its acquisition, devoted by the city to the uses of a public square, it may reasonably be presumed that such was the "public use" had in view when the resolution was passed. Under these circumstances it is inconceivable, and it would require the plainest terms to enable us to determine that it was the intent of the deed that if the property was put to the public use contemplated by the resolution, and not to the use of a public street, the city should lose its title, and the property revert to the grantors. A glance at the plat, with which we have been furnished, will satisfy anyone that to use this parcel of land as a street would be profitless, both to the grantors and the public ; and it is agreed by the parties, that such use would render the property included in the resolution "incapable of improvement as a public square, as provided in the ordinance of 1872."

We are disposed to place but little importance upon the fact, that the consideration in the deed is merely nominal. The whole of the Perkins' Spring property (except a portion thereof) was transferred to the city by the same parties. The resolution authorized a lease at $4.50 per front foot of the building lots contained.   Prior to the passage of the resolution Clarke street did not exist.   It is obvious, that if Clarke street be taken into account, more front feet can be obtained than there would otherwise be possible, and thus a larger price could be realized for the entire property. The transfer to the city of the Spring property, although accomplished by two deeds, ought to be regarded as one transaction, and the real consideration for the conveyances must be taken to be the aggregate amounts received from the entire property.   In view of all the facts of the case, and the terms of the deed, we think the words relied on to create the condition are quite as consistent with an intent to repose a confidence in the authorities of the city, that they "would fulfil the purpose of the grant, so long as it was reasonable and practicable so to do, as they are with an intent to impose a condition which should compel it, on pain of forfeiture, to maintain the property as a public street, however inconvenient, impracticable or worthless it might become, either to the vendor or vendee."   "Language so equivocal cannot be construed as a condition subsequent, without disregarding the cardinal principle of real property * * * that conditions subsequent, which defeat an estate are not to be favored or raised by inference or implication." *Rawson* v. *Inhabitants*, *&c.*, *supra*, 131.

From what we have said it follows that the judgment of the Court below must be affirmed.

*Judgment Affirmed.*