DAVID B. ELLICOTT ET AL. *vs.* THOMAS P. EL-
LICOTT ET AL.

*Devise and Legacy—Condition Subsequent Annexed to Bequest—Im-
possibility of Performance—Vesting of Estate.*

When the performance of a condition subsequent annexed to a devise
or bequest becomes impossible by the act of God, it is dispensed
with and the estate vests absolutely in the devisee.

A testatrix devised as follows : " I leave the rest and residue of my
Baltimore property to my grand-nephew, James, for the purpose of
securing to him a liberal education. He shall remain at some good
preparatory school in the State of Massachusetts until he is fitted to
enter either Harvard or Yale University, where he shall remain un-
til he has finished the college course. If, however, through his own
disinclination or incapacity or the indifference of his parent or guar-
dian, he shall fail to carry out these intentions, then the money
which has been left to him for this purpose shall pass away from him
entirely into the body of my estate." By another clause of the will
the testatrix gave and bequeathed to James certain other property
real and personal, " provided, however, that all the estate and prop-
erty devised and bequeathed by me to James P. E., shall be held by
my trustee until the said James shall have attained the age of twenty-
five years," in trust, to manage the same and devote the net income
to the education of James. The will also provided that " in case the
above directions having been carried out upon my said nephew,
James, attaining the age of twenty-five years, I desire my trustees to
deliver over the property and estate into his hands and possession."
At the time of the death of the testatrix, her nephew, James, was
fifteen years of age. He died seven years afterwards, while in the
sophomore class at Harvard. *Held*, that James took a vested equit-
able estate in the property devised to him subject to be divested by
his non-performance of the condition mentioned ; that this was a
condition subsequent and its performance having become impos-
sible by his death, the estate was not thereby divested but the same
descends to his heirs and next of kin.

Appeal from a decree of the Circuit Court of Baltimore
City (WICKES, J.)

The cause was argued before McSHERRY, C. J., FOWLER,
BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*Bernard Carter* and *John Prentiss Poe*, for the appellants.

*William A. Fisher* and *Arthur Steuart*, for the appellees.

BOYD, J., delivered the opinion of the Court.

By this appeal we are called upon to determine what estate, if any, was vested in James Pike Ellicott under the last will and testament of Mrs. Elizabeth E. Pike. He was the grand-nephew of the testatrix and in his fifteenth year at the time of her death, which occurred in 1891—a few months after her will was executed. He died intestate, in March, 1898, having been twenty-one years of age the December preceding his death. The will is divided into fourteen paragraphs and the testatrix stated in it that it was written by herself. She first named the executor and trustee, then made a number of devises and bequests, and after giving ten thousand dollars to each of the four children of her brother, William M. Ellicott, in addition to an interest in another fund, made them her residuary devisees and legatees. The paragraphs directly involved in this proceeding are the fifth, tenth and eleventh, and are as follows:

"5. I leave the rest of my Baltimore property to my grand-nephew, James Pike Ellicott, for the purpose of securing to him a liberal education. He shall remain at some good preparatory school in the State of Massachusetts until he is fitted to enter either Harvard or Yale university, where he shall remain until he has finished the collegiate course. If, however, through his own disinclination or incapacity, or the indifference of his parent or guardians, he should fail to carry out these intentions, then the money which has been left to him for this purpose shall pass away from him entirely into the body of my estate.     *     *     *

"10. I give and bequeath to my grand-nephew, James Pike Ellicott, in fee-simple, all my real estate situated in the town of Robbinston, Maine, and also all furniture, plate, horses, carriages, boats, harness, by which I mean everything of every description that I own in the town of Robbinston, and not hereafter specially disposed of by me.

" 11. Provided, however, that all the estate and property devised and bequeathed by me to James Pike Ellicott shall be held by my trustee until the said James Pike Ellicott shall have attained the age of twenty-five years.    In trust, to rent, manage and take charge of the real estate, keep it in repair, pay taxes and expenses incidental thereto, also to keep the personal estate invested in good securities and collect and receive all rents, increase and interest accruing on said estate, and devote the net income arising therefrom to the special object mentioned above, viz., the education of James Pike Ellicott.    It being my desire that he may be thoroughly prepared to enter into any profession for which he has inclination or capacity.    All surplus income arising from the property given for his use by this my will, not required in the earlier years of his minority for his education and maintenance, to be carefully invested and accumulated for the later period of his minority, when his collegiate expenses will be increased.    In case the above directions have been carried out upon my said nephew, James Pike Ellicott, attaining the age of twenty-five years, I desire my trustees to deliver over the property and estate into his hands and possession.    But I specially desire my said grand-nephew not to sell the Robbinston place till he shall attain the age of twenty-five years, as it is my earnest wish to keep the property as long as possible in the family, and have it go with the name."

James Pike Ellicott graduated at a preparatory school in Massachusetts, and in the fall of 1896 entered the freshman class at Harvard.    He was in the sophomore class when he died, but was still under some conditions, either as to his entrance into college or imposed afterwards.    The testimony is not altogether clear about that, but it is not material. The question is whether under this will he had such a vested estate as descended to his heirs or whether the property referred to passed to the residuary devisees and legatees named in the will.    The Court below decreed that the part of the estate of Mrs. Pike, thus left young Ellicott, became

at her death, vested in him, and at his death descended to his heirs at law, and directed the trustee to at once relinquish control over the same, the period during which he as trustee was directed to hold it having been terminated by the death of young Ellicott. From that decree this appeal was taken.

It may be conceded that the desire of the testratrix, most conspicuously made known in her will, was that this grand-nephew, who was named after her deceased husband, should receive such an education and be so prepared for the battle of life that he would reflect credit upon him whose name he bore, although it does not follow that she was not in part influenced by her affection and regard for him. The testimony shows that she always took a very special interest in him, paid nearly if not all his expenses after he went to Adams Academy, and gave means from time to time for his benefit. He at least does not seem to have been in either of the classes of which she says " I have not thought it necessary to divide my property among those who have received a larger amount from others than I can give to any. Still less, have I cared to remember any who have shamefully and despitefully used me." Her idea undoubtedly was that the best way to provide for him was to have him properly educated, but that was not all, for after he received the education contemplated by her, he was to have the *corpus* of the estate. If she had only been interested in his education and had intended that the property set apart for him should be used for that purpose *alone*, then she could, and probably would, have directed that the *corpus*, on his arrival at the age of twenty-five years, should be otherwise disposed of.

But let us examine the will itself to ascertain the legal effect of the terms used therein, always keeping in mind the intention of the testatrix so far as indicated by the will and such circumstances as we can properly consider. In paragraph 5 the language is : " I *leave* the rest of my Baltimore property to my grand-nephew James Pike Elli-

cott for the purpose of securing to him a liberal educa-
tion." In paragraph 10: "I *give and bequeath*" to him
"*in fee-simple* all my real estate situated in the town of
Robbinston, Maine, also all furniture, etc.," and in the part
that created the trust she said : "provided, however, that
all the estate and property *devised* and *bequeathed* by me to
James Pike Ellicott" shall be held by the trustee until said
Ellicott shall have attained the age of twenty-five years, *in
trust*, etc.   The language thus used by the testatrix in
making provision for him was not only sufficient to vest an
equitable estate in him, immediately upon her death, but
unless qualified by some other parts of the will is ab-
solutely conclusive of her intention to do so.   The form of
the gift " shows that a present and not a future estate was
intended." *In re Stickney's Will*, 85 Md. 103.   She did
not even " *leave* " or " *give and bequeath*" the property *to
the trustee* for the use of her nephew, but on the contrary
she not only devised and bequeathed it to the latter, but,
in creating the trust and describing what the trustee should
hold, she said " all *the estate* and *property devised* and *be-
queathed* by me *to James Pike Ellicott.*"   When the trustee
was ready to enter upon the discharge of his duties, in
order to ascertain what he was to hold, he was compelled
to see *what was thus devised and bequeathed to James.*   The
gift of the Baltimore property " for the purpose of securing
to him a liberal education " did not of itself create a condi-
tion, for, as was said in *Kilpatrick v. Baltimore*, 81 Md.
193, " a condition will not be raised by implication from a
mere declaration in the deed that the grant is made for a
special and particular purpose without being coupled with
words appropriate to make such a condition," and the
same principle applies to a devise or bequest.   What then
is there to be found elsewhere in the will to overcome the
language used by the testatrix which so strongly indicates
her intention to vest the property in her grand-nephew ?
The trust created by paragraph 11 was simply that the
trustee should rent, manage and take charge of the real

estate, keep it in repair, pay taxes and expenses incidental thereto, also to keep the personal estate properly invested and collect the interest "and devote the net income arising therefrom to the special object mentioned above, viz., the the education of James Pike Ellicott." The testatrix also provided for the investment and accumulation of any surplus income not required in the earlier years of his minority " for his *education* and *maintenance*," so it could be used when his collegiate expenses would.be increased. · There is , therefore, nothing in that to cast any donbt on her intention, so clearly previously expressed as to his taking the estate. When she made her will, and indeed when she died, he was not yet fifteen years of age, and it was therefore eminently proper that the estate should be left under the control of a trustee until James reached his majority, and as she intended that the income should be used for his education and maintenance, and fixed twenty-five years of age as the time within which he was to complete his collegiate course, it was far better to at once name a trustee instead of giving his guardian control, especially as his father was her executor and trustee.

The only other provision in the trust which reflects upon the question we are to determine, besides what is in paragraph five, of which we will speak presently, is : " In case the above directions have been carried out, upon my said nephew, James Pike Ellicott, attaining the age of twenty-five years, I desire my trustee to deliver over the property and estate into his hands and possession." The direction " to *deliver over* the property and estate *into his hands and possession*," in so far as it reflects upon the question whether the estate was intended by the testatrix to be vested in her nephew, indicates that it was. She did not direct him under those circumstances to convey property to her nephew, the title to which up to that time was not vested in him, but simply to deliver over and give *the possession* of " the property and estate "—which imports that she considered it already vested in him, but that he, up to that

time, was to be kept out of the possession of the *corpus.* Nor did she make any provision for the trustee conveying it to any other person or persons if her directions had not been carried out. She therefore could not have supposed that the property was vested *in the trustee,* excepting such legal title as was in him by intendment of law, as would enable him to discharge his duties as such trustee. She certainly did not intend that from the time of her death until the period when her grand-nephew would reach the age of twenty-five years, if he lived that long, the bene-ficial interest in the estate should be in the residuary devisees, for there is nothing in the will to suggest that, and as she devised nothing to the trustee, and the legal title was only in him by intendment of law, she must have intended that the equitable interest should be somewhere, and the only possible place indicated by her will where it could be, if not in the trustee, was in James Pike Ellicott, so long as he had not forfeited his right to it.

The provision, " In case the above directions have been carried out," undoubtedly refers to the directions contained in paragraph 5. They are that James shall remain in a good preparatory school in Massachusetts until he was fitted to enter either Harvard or Yale, " where he shall re-main until he has finished the collegiate course. If, how-ever, through his own disinclination, or incapacity, or the indifference of his parent or guardian, he shall fail to carry out these intentions, then the money which has been left to him for this purpose shall pass away from him entirely into the body of my estate." The latter part of the clause just quoted adds strength to the appellee's contention that the title to the equitable estate in this property vested in James at the death of the testatrix. It is that " the money *which has been left to him* for this purpose *shall pass away from him entirely* "—thus not only speaking of the money *which had been left* to him, but when she said it " *shall pass away from him* " it seems to us that the necessary inference is that it was, in her opinion, *in him,* and hence could " *pass*

*away from him,"* upon his failure to carry out her inten-
tions as therein expressed.   At the argument the meaning
of the word " money " in the connection in which it is used
was discussed—the appellants contending that its usual and
ordinary meaning should be given it, and that its use showed
that the intention of the testatrix was not to give him any
estate in the *corpus,* unless and until he graduated, but only
to give him in the meantime so much of the *income* as was
necessary to enable him to become entitled to the *corpus* by
the time he should arrive at the age of twenty-five years,
by his graduation at or before that time. .  They say he
took an equitable interest in *the income,* subject to the con-
dition precedent that he should finish his collegiate course
at Harvard or Yale by the time he arrived at the age of
twenty-five years, and if he graduated prior to that time
the equitable estate in the *income,* subject to such condition
precedent, was to become a vested estate in the *corpus,* of
which, upon his arrival at that age, he was to receive the
actual possession, freed from the trust.   Although the will
furnishes some ground for the contrary contention, it may
be conceded that the word " money," thus used by the tes-
tatrix, is equivalent to " income " and only meant that.   In
paragraph 3, in making certain provisions for her sister,
Rebecca, the testatrix apparently used the word in its ordi-
nary sense, and she may have intended to do so in this
paragraph.   But we cannot admit that it at all follows that
this use by her of the term " money " shows any intention
on her part that he should not have a vested equitable in-
terest in the estate.   Until he was twenty-five he was only
to have the possession and use of the *income—the money.*
That is all that owners of equitable estates in properties
held by trustees usually have.   There are, of course, cases
in which they may have the enjoyment and use of the *cor-
pus,* but if the legal title of real and personal property is
held by a trustee for the beneficial use of another who gets
the income, the latter ordinarily has an equitable, vested in-
terest which is liable for his debts and, if not limited to life

or some definite period, it will descend to his heirs at law
or next of kin.   Generally if the interest from the invest-
ment of a fund or the profits of an estate be given by
will, the devisee will take the fund or estate absolutely, al-
though that does not obtain when the will shows a differ-
ent intent, (*Cooke* v. *Husbands,* 11 Md. 506,) and we cannot
see how this direction as to the money passing away from
him can be any evidence of the intention of the testatrix,
not to give him a vested equitable estate subject to be de-
feated by the non-performance of the condition. " It makes
no difference, *as to the vesting,* whether the legal estate be
devised to trustees who are required to convey according
to the direction of the will, or whether the interest is pro-
vided to take effect without the intervention of trustees, nor
that the trust provides for the accumulation of income until
the period of payment or distribution arrives." *Tayloe* v.
*Mosher,* 29 Md. 451.   In this same paragraph, as we have
seen, the testatrix had used language which imports an in-
tention to make an absolute gift, as she afterwards did in
the tenth paragraph as to the Maine property, and when she
provided in paragraph 11, that a trustee should hold the
property *in trust* to use the net income for the education
and maintenance of her nephew it would be placing a very
narrow construction on the whole will to hold that she only
intended to give him an equitable interest in the *income* un-
til he graduated, and then such interest was to become a
vested estate in the *corpus.*

The only causes of his failure to carry out these instruc-
tions, which should work the result mentioned, assigned by
the testatrix, are "his own disinclination, or incapacity, or
the indifference of his parent or guardian." The one re-
lied on by the appellants is his " incapacity," and they con-
tend that his death, which prevented him from graduating,
whatever he might have done if his life had been spared, is
included in that term.  . But while it is true that the word
" incapacity " may sometimes apply to physical as well as
mental conditions, was it used by the testatrix in that broad

sense? It was used in connection with the education of this young man—with reference to his power to complete the collegiate course provided at Harvard or Yale. It was not a question whether he would have the necessary funds, for those she was providing, nor the inclination to study, as that was included by another term, but it evidently applied to his mental powers. If while he was at the preparatory school, his teacher had said of him that he did not have the " capacity" to graduate at Harvard, would that have been understood to have referred to any other than his mental capacity? If when he entered Harvard it had been said, he will fail to graduate by reason of his " incapacity," would it have been thought to refer to his death before graduating? Of course his death would cause him to be incapable of graduating, but that is not the term that would be used, if it was meant that he would not graduate because he would die before doing so. If the testatrix had meant that " if for any reason whatever " he did not graduate, he should forfeit the estate, it would have been easy to say so, and it is only reasonable to suppose that if she had intended that if his death prevented his graduation it should be forfeited, she would not only have said so in terms that would have admitted of no doubt, but she would probably have directed where it should in that event go. She did so in other instances and she was evidently a woman of considerable intelligence and with very decided convictions as to how her estate should go.

The concluding clause of paragraph eleven, "But I specially desire my said grand-nephew not to sell the Robbinston place till he shall attain the age of twenty-five years, as it is my earnest wish to keep the property as long as possible in the family, and have it go with the name," is relied on by the appellees. When that is taken in connection with the tenth paragraph in which she gave him that property *in fee-simple* it certainly does afford some evidence of her intention that the property should be vested in him, before he was twenty-five years of age, but if the appellants'

theory was correct, that she intended him to have a vested equitable estate as soon as he graduated, although he was not twenty-five, it is possible that she might have for that reason placed that provision in the will, and therefore in considering the question we have not attached as much importance to it as might otherwise have been done.

Taking the whole will into consideration, our conclusion is that the testatrix intended to vest an equitable estate in the properties mentioned in her grand-nephew, at the time of her death, subject to be divested by the non-performance of the condition imposed by her, which was a condition subsequent, and not precedent. In that conclusion we are supported by the settled rules of construction of wills and the presumptions of law. It undoubtedly favors the early vesting of estates, as has often been said by this and other Courts, but nowhere more emphatically than in *Tayloe* v. *Mosher*, 29 Md. 450. The same words may be used to create a condition precedent, as a condition subsequent, "but Courts are averse to construing conditions to be precedent when they might defeat the vesting of estates under a will." *Pennington* v. *Pennington*, 70 Md. 442. " It is equally well settled that if the thing to be done does not necessarily precede the vesting of the estate in the grantee but may accompany or follow it and may as well be done after as before the vesting of the estate, the condition is subsequent." *In re Stickney's Will*, 85 Md. 102. Indeed, " in doubtful cases the disposition of the Courts is to construe language as creating a trust or covenant rather than a condition." *Kilpatrick's case*, 81 Md. 193 ; 6 *Ency. of Law* (2nd ed.) 502. Then the presumption is that the testatrix used the words of gift we have referred to in their usual sense, unless the contrary clearly appears, which is not the case.

Having determined that this was a condition subsequent, the estate was not divested by the death of James who was engaged in fulfilling the condition when stricken down. The performance becoming impossible by the act of God,

it is dispensed with and the estate vested absolutely. 6 *Ency. of Law* (2nd ed.) 506 ; *Hammond* v. *Hammond*, 55 Md. 575. In that case the testator left the use of twenty-five hundred dollars to his brother "for that the said C. Lewis Hammond shall look after and take care of our beloved brother Rezin while he shall live, and bury him at his death." Rezin died before the testator, and it was held that the condition annexed to the bequest was a condition subsequent, and its performance being made impossible by the act of God the legatee took unconditionally. In *Merrill* v. *Emery*, 10 Pickering, 511, the testator left a legacy to his widow, upon condition that she should educate and bring up his granddaughter until she arrived at the age of eighteen years or married. The widow died shortly after the testator and it was held to be a condition subsequent, and that the non-performance was excused by the death of the widow. In *Burnham* v. *Burnham*, 79 Wis. 557, the testator had by his will made certain bequests to each of his children, including Daniel, who was an inebriate and spendthrift, and afterwards added a codicil by which he declared that his son Daniel should not have any part or interest in his estate unless within five years after the testator's decease he reformed and became a sober and respectable citizen, of good moral character. He directed that "in the event that he shall at that time have become a sober man and have a good moral character," in the opinion of the executors, " I give, devise and bequeath to him, and order paid over to him, one-half of the property and estate bequeathed to him in my will," and that if he continued to remain sober, etc., for the further period of five years the other half should be paid him. He also directed his executors to hold and retain this share of his estate in trust until the expiration of five years after his death, and thereafter, unless his son had reformed, to pay to the children of Daniel certain sums per annum, and if he did not reform within ten years then to pay the fund to Daniel's children. In less than a year after the testator's death

Daniel died.   It was held that the estate vested in Daniel subject to the conditions subsequent, and was not divested by his death but became absolute and descended to his widow and children as provided by the statute in cases of intestate estates.   Many other cases might be cited illustrating the tendency of the Courts to hold conditions to be subsequent rather than precedent and to declare estates to be vested, but it is unnecessary.   The article in 6 *Ency. of Law*, on Conditions cites many of them.

We are, then, of the opinion that this estate having vested in James Pike Ellicott, subject to the condition subsequent, the non-performance of which is excused by his death, descended to his heirs at law and next of kin, and the decree will be affirmed.   But as it was proper, for the protection of the trustee and to settle the rights of the parties, to have the will construed, we will direct that the costs be paid out of the estate.

*Decree affirmed, costs to be paid out of the estate.*