BURNHAM and another, by guardian *ad litem*, Appellants, vs. BURNHAM and others, Respondents.

*April 9 — May 5, 1891.*

*Construction of will: Conditions subsequent.*

Under a will whereby the testator gave a certain sum to each of his children within one year after his death, and the remainder in equal shares after a life estate in his wife, and a subsequent codicil whereby he declared "that my son D. shall not have nor receive any part, parcel, or interest in and to my estate, real or personal, unless within five years after my decease he shall have reformed and become a sober and respectable citizen, of good moral char-

acter," and directed that if D. did so reform, the executors should pay over to him one half the property bequeathed to him, and if he remained reformed for a further period of five years, pay over to him the other half thereof; that the executors should retain the share of D. in trust, and pay out of it certain sums for the support of D. and the education of his children, until the youngest child arrived at the age of twenty-five years, and if D. had not reformed within the ten years, then to pay over the same in equal shares to D.'s children,— *held*, that the conditions on which D. was to receive the share first bequeathed and devised to him were conditions subsequent, and that the estate so given him by the will vested in him subject thereto immediately upon the death of his father, and was not divested by his death unreformed within the five years specified in such codicil, but then became absolute, and descended to his widow and children, as prescribed by the statute in case of intestate estates.

APPEAL from the Circuit Court for *Milwaukee* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

It appears from the record that April 22, 1874, George Burnham executed his last will and testament, containing the following provisions, to wit:

"*First.* I give, devise, and bequeath to my wife, Barbara Burnham, after paying the bequests, and subject to the other provisions hereinafter contained in this will, all the rents, issues, and profits of my estate, real, personal, and mixed, wherever the same may be, to have, hold, and enjoy during the full term of her natural life; the same to be taken and accepted by her in lieu of dower or right of dower in my said estate.

"*Second.* I give and bequeath to each of my children me surviving the sum of ten thousand dollars, to be paid within one year after my decease," subject to be reduced by subsequent advances.

"*Seventh.* It is my will, and I do hereby so order and direct, that if any of my said children me surviving shall die without issue before their mother, Barbara Burnham, that

the share of the child so dying shall be and belong to the children her surviving, share and share alike. . . .

"*Ninth.* After the death of my said wife, Barbara Burnham, I give, devise, and bequeath all my property, real, personal, and mixed, wherever the same may be, to my children me and her surviving, share and share alike; provided, however, that if there are at that time the issue living of any deceased child, that the issue of such deceased child so surviving shall inherit the share that would by this will have descended to the parent of said child or children were he or she then surviving.

"*Eleventh.* I hereby nominate and appoint my wife, Barbara Burnham, executrix, and my sons *Charles T.* and *John Q. Burnham* the sole executors of this, my last will and testament; and, in case of the death of either, that the survivor or survivors have all the rights and powers hereby granted, with the same force and effect as if originally appointed."

It further appears in the record that March 13, 1880, Daniel G. Burnham, son of said testator, was put under guardianship as an inebriate and spendthrift; that February 3, 1883, the said George Burnham executed a codicil to said will in the words and figures following, to wit:

" Whereas, I, George Burnham, of the city and county of Milwaukee, Wisconsin, have heretofore made my last will and testament in writing, bearing date the 22d day of April, A. D. 1874, in and by which I have devised and bequeathed to my son Daniel G. Burnham certain portions of my estate, and which I desire to change:

" Now, therefore, I do by this writing, which I do hereby declare to be a codicil to my said last will and testament, and to be taken as a part thereof, do hereby declare that my will is that my said son Daniel G. Burnham shall not have nor receive any part, parcel, or interest in and to my estate, real or personal, unless within five years after my decease

he shall have reformed, and become a sober and respectable citizen of good moral character, of which my executors heretofore named, or the survivors of them, shall be the sole judge at that time. In the event that he shall at that time have become a sober man and have a good moral character in their opinion as aforesaid, I give, devise, and bequeath to him, and order paid over to him, one half of the property and estate bequeathed to him in my will aforesaid; and, if he shall continue to remain to be such sober man and have a good character, as aforesaid, in their opinion, for the further period of five years, then I order and direct that the other half of said devise and bequest be paid over to him as in said will provided, subject, however, to the conditions and limitations contained in this codicil.

" *Second.* I hereby order and direct that my executors, and the survivors thereof, named in my said will, shall hold and retain the share of my estate devised and bequeathed to my said son Daniel G. Burnham in trust, to be disposed of and paid over as herein provided, to wit: Until the expiration of five years after my death, and thereafter, unless he shall have reformed, as aforesaid, until his children shall have arrived at the ages as herein set forth, I order and direct my executors to pay out of the property and estate herein devised and set apart for my said son Daniel G. Burnham $200 per year to each of the children living and lawfully begotten of my said son Daniel G. Burnham for their education and support; the same to be used and paid out under their direction, and as they shall deem best and most advantageous for their and each of their education and support; provided, however, that said payments of $200 each shall cease when the said children shall each have arrived at the age of eighteen years, except in the case of the girl or girls, who shall have said sum paid yearly until she or they shall have married, or until she or they shall have arrived at the age of twenty-five years if unmarried, but no longer.

" *Third.* I further order and direct that it is my will that when the youngest child of my said son Daniel shall have arrived at the age of twenty-five years, in the event that my said son Daniel shall not have reformed or become a sober man, with good character, as aforesaid, at the expiration of ten years after my death, that my executors shall pay over to my said grandchildren, namely, the legitimate children of said Daniel G. Burnham, then surviving, share and share alike, the part of my estate bequeathed and devised to their father, said Daniel G. Burnham, aforesaid; the same to be theirs and their heirs' and assigns' forever: provided, however, that until the death of my said son Daniel G. Burnham my executors shall retain in their hands sufficient of said estate to comfortably support or board said Daniel G. Burnham, which said sum shall not exceed the sum of $350 per year; the same to be paid, laid out, and expended by my executors only when necessary for his board and clothing, of which they are to be the sole judges; and the fund so reserved at his death to be distributed to his children in the manner aforesaid, share and share alike."

March 2, 1889, the said testator, George Burnham, then and for many years a resident of Milwaukee, died testate, leaving an estate of the value of $1,000,000 and upwards, and also leaving him surviving, as his only next of kin and heirs at law, his widow, Barbara, and his three sons *Charles T.*, *John Q.*, and the said Daniel G., and his daughter, Phoebe A. Hamilton. April 4, 1889, the said will and codicil were duly admitted to probate in and by the county court of Milwaukee county, and thereupon letters testamentary were duly issued to the said Barbara, *Charles T.*, and *John Q. Burnham*, as the executors named in said will, who thereupon qualified and entered upon their duties as such executors. December 29, 1889, the said Barbara died intestate. Since her death the said *Charles T.* and *John Q. Burnham* have acted as such executors.

January 18, 1890, the said Daniel G. died intestate at the place of his residence in Milwaukee, leaving him surviving his widow, the defendant *Marcia G. Burnham*, and the plaintiffs, *John G.*, *Daniel M.*, and *Mildred M. Burnham*, as his minor children and only heirs at law. March 31, 1890, William B. McLaren was duly appointed by said county court the guardian of said infant plaintiffs, and thereupon qualified as such, and letters of guardianship were thereupon duly issued to him.

May 1, 1890, this action was commenced in the circuit court for the construction of said will and codicil. The complaint is in the ordinary form in such cases. The defendants *Charles T.* and *John Q. Burnham*, as such executors, answered said complaint. Upon the trial of said issues the court found, in addition to the facts already stated, the following findings of fact and conclusions of law, to wit:

"*Seventh.* That at the time of the making of said codicil to said will by George Burnham, now deceased, said Daniel G. Burnham, now deceased, was given to intoxication, and was not a sober citizen of good moral character, and that he did not reform and become a citizen of good moral character at any time before his death, but died at the time aforesaid, without any change in or reformation of his habits or character."

"*Conclusions of law:*

"*First.* The said will of George Burnham, deceased, should be construed to the effect that the provision made in the will for Daniel G. Burnham was, by force of the codicil, made conditional and contingent, as to one half of it, upon his reformation within five years after the death of his father, the said George Burnham, deceased, and as to the other half, upon his remaining sober and reputable during the succeeding five years; that such conditions were conditions precedent, and having become impossible of performance by reason of the death of said Daniel G. Burn-

ham, no estate or interest in the property or estate of said George Burnham, deceased, ever vested in him, said Daniel, and that his share of the estate must descend as though he he had lived and failed to perform the said conditions.

"*Second.* That the said will and the said codicil, and all the legacies and devises therein contained, are in all respects valid, and in no respect void for uncertainty and ambiguity.

"*Third.* That the conditions in said codicil upon which the said Daniel G. Burnham or his heirs should have and hold the portion of property devised and·bequeathed to him by the terms of said will are conditions precedent, and not conditions subsequent.

"*Fourth.* That no part of the sum of $10,000 mentioned as a legacy in said will, or any portion of the said estate of George Burnham, deceased, should be paid over and delivered to said William P. McLaren, guardian for said minor children of Daniel G. Burnham, deceased, but must be held in trust, and disposed of as provided in said codicil."

From the judgment entered thereon accordingly the plaintiffs bring this appeal.

For the appellants there was a brief by *Miller, Noyes & Miller,* and oral argument by *G. H. Noyes.* They contended that the conditions of the payment of any share of the estate to Daniel were subsequent, and that the estate vested in him subject thereto immediately upon the death of his father, and descended to his widow and children, citing many authorities.

For the respondents there was a brief by *Rogers v. Mann,* and oral argument by *E. P. Smith.* They argued that the conditions on which Daniel was to share in the estate were conditions precedent, and having become impossible of performance by the act of God, no estate or right vested in him. Coke Litt. 206, 208, 218; *Bertie v. Falksland,* 1 Salk. 231; *Rondel v. Currer,* 2 Brown Ch. 67; *Boyce v. Boyce,* 16 Sim. 476; *Hodge's Legacy,* L. R. 16 Eq. 92; *Astley v.*

*Earl of Essex*, 6 Ch. App. Cas. 898. As to what are conditions precedent, they cited *Dew v. Messenger*, 33 N. J. L. 499; *West v. Moore*, 37 Miss. 114; *Marston v. Marston*, 47 Me. 495; *Caw v. Robertson*, 5 N. Y. 125; *State v. Mount*, Coxe (N. J.), 292; *Jackson v. Kip*, 3 Halst. 241; *Johnson v. Warren*, 74 Mich. 491; *Hawke v. Enyart*, 46 N. W. Rep. 422.

CASSODAY, J. In construing the will we are to consider the original and the codicil as one instrument in law, and together as constituting the last will and testament of the testator. *Ford v. Ford*, 70 Wis. 46. In other words, every provision of the original will remains in force, except in so far as it was changed or modified by the codicil.

Subject to the provisions in favor of the widow, the testator by the original will gave, devised, and bequeathed the undivided one-fourth part of his estate to his son, Daniel G., with the proviso to the effect that, if he did not survive his mother, then such of his issue as should be living at the time of her death should inherit the share of the testator's property that would otherwise have become Daniel G.'s. Without that provision, the law would, in that event, undoubtedly have given Daniel G.'s share to his children. Sec. 2289, R. S. The intemperate and extravagant habits of Daniel G. were such as to induce his father, as an act of prudence, to make the codicil. The manifest purpose of the codicil was to preserve Daniel G.'s share of the estate for and to secure the same to his children in the event that he should not reform and become a sober and respectable citizen of good moral character within the time therein specified. In case he should so reform within five years after the death of his father, then the testator gave, devised, and bequeathed to him, and the executors were thereby ordered *to pay over* to him, one half of the property and estate so bequeathed to him by the original will; and if he continued so reformed for the further period of five years, then they

were ordered and directed to pay over to him the other half of the said devise and bequest, as in the original will provided; subject, however, to the conditions and limitations contained in the codicil. In so far as the codicil in form gave, devised, and bequeathed such share of the estate to Daniel G., it was merely confirmatory of the grant and bequest in the original will, and did not necessarily postpone the vesting of the equitable right to the gifts until the expiration of the time therein specified. Unless he so reformed he was not to have or receive any part, parcel, or interest in or to his father's estate, but the executors were ordered and directed to hold and retain the share so devised and bequeathed to him "*in trust*, to be disposed *of and paid over* as" provided in the codicil,—that is to say, paid out for the education and support of the children of Daniel G.; and finally distributed as and at the times therein prescribed: provided, that until the death of said Daniel G. they retain in their hands sufficient of said estate, not exceeding $350 per year, to comfortably board and support him.

It will be observed that the codicil did not in any way divert any part of Daniel G.'s share of the estate from the line of descent where it would have gone under the statute had no codicil been made, and Daniel G. had preserved the same and not disposed of it by will or otherwise. In other words, the testator did not by his codicil undertake to, immediately upon his death, disinherit Daniel G., but only in case he should first demonstrate his incapacity for taking care of his share of the estate by not reforming as and within the period specified. For the purpose of preventing his share of the estate from being squandered by him, therefore, the testator by his codicil withheld the possession and control of the same from him until he should first demonstrate his capacity or incapacity for taking care of it. But the withholding of such possession and control did not

prevent his right to his share of the estate from vesting in him immediately on the death of his father, subject, however to the conditions named in the codicil. *Millard's Appeal*, 87 Pa. St. 457.

It is undoubtedly true that "in the construction of wills the law, in doubtful cases, leans in favor of an absolute, rather than a defeasible, estate; of a vested, rather than a contingent, one; of the primary, rather than the secondary, intent; of the first, rather the second, taker, as the principal object of the testator's bounty; and of a distribution as nearly conformed to the general rules of inheritance as possible." *Smith's Appeal*, 23 Pa. St. 9.

Upon the principles stated and the authorities cited in *Baker v. McLeod's Estate*, ante, p. 534, we must hold that Daniel G.'s right in equity to his share of the estate vested in him immediately upon the death of his father, subject only to be divested by his failure to perform the conditions subsequent named in the codicil. In other words, the gift over to Daniel G.'s childen was dependent wholly upon his failure to perform such conditions subsequent. As indicated, Daniel G. had five years after the death of his father to perform the first of such conditions, and the further period of five years to perform the second of said conditions. As a matter of fact he died within eleven months after the death of his father, and hence by such death the performance of either of such conditions became wholly impossible.

The question recurs whether such right in equity to his share of the estate thus vested in him became divested, and passed over to his children, by virtue of his death before the expiration of the time for the performance of either of such conditions subsequent. The rule of law is well settled, and in fact elementary, that, "if a condition subsequent be possible at the time of making it, and becomes afterwards impossible to be complied with, either by the act of God,

or of the law, or of the grantor; or if it be impossible at the time of making it, or against law,— the estate of the grantee, being once vested, is not thereby divested, but becomes absolute." 4 Kent's Comm. *130; Coke, Litt. 206a; 2 Bl. Comm. *156; 2 Jarm. Wills, 521; *Davis v. Gray*, 16 Wall. 230; *Culin's Appeal*, 20 Pa. St. 243; *Merrill v. Emery*, 10 Pick. 507; *Parker v. Parker*, 123 Mass. 584; *Morse v. Hayden*, 82 Me. 227; *Merriam v. Wolcott*, 61 How. Pr. 377; *Jones v. Bramblet*, 1 Scam. 276; *Jordan v. Dunn*, 13 Ont. 267. The case at bar is clearly within the rule stated. The result is that, the right to the estate in question having become vested in Daniel G., the same was not divested by reason of his death prior to the expiration of the time in which he was required to reform, but upon his death descended to his children and widow, as prescribed by the statutes in case of intestate estates.

The costs and disbursements of both parties in this court and the circuit court are payable out of the estate. The county court will make such allowance for counsel fees to both parties as, in the exercise of a sound discretion, may be just.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for further proceedings in accordance with this opinion.