# WILL OF ALLIS.

*March 17—June 13, 1916.*

*Wills: Construction: Interest of grandchildren in estate: Validity:
    Perpetuities: Executors and trustees: Final discharge: Guardian
    ad litem of infants: Allowances.*

1. In construing a will a gift to a grandchild cannot be implied from
   a gift to a daughter, defeasible if the daughter dies without children surviving.
2. Paragraph 6 of a will gave property to trustees "to be held for the
   use, or assignment, of my wife during life, and after her death
   for a joint summer residence of my children and their families,
   as they may agree among themselves—particularly those residing in Milwaukee. . . . If at any time it shall be the joint wish
   of my wife and children residing in Milwaukee, or said children
   after her death, to have the property sold, it may be sold and the
   proceeds go into my estate fund."   The "estate fund" was a part
   of a business trust created by the will, and the business and the
   fund were to remain and be conducted as directed in the will
   during the minority of the children and the life of the widow.
   The provisions in respect thereto rather exclude than support
   the idea that there was any gift out of that fund to the grandchildren.   *Held,* that paragraph 6 did not give any interest in
   the summer residence to grandchildren.

3. Although some of the provisions in the will evince a purpose to keep the property in the family of the testator, to prevent it from going to strangers to his blood, yet, the testator having made no limitation over to his grandchildren, none can be made, and the grandchildren took under the will no right, title, or interest in the estate.

4. Whether or not the will was void because the scheme thereof involved an unlawful suspension of the absolute power of alienation, is not decided.

5. Assuming the will to be valid, final settlement of the estate and discharge of the executors and trustees was properly adjudged, it appearing that they had executed their trust as fully as the scheme of the will was capable of execution and to the satisfaction of the persons interested, all of whom participated in and assented to the various transactions and the administration of the estate resulting in the order of distribution and discharge.

6. If, on the other hand, the will be deemed void, the same result follows, the entire estate having been distributed to the widow and heirs at law of the testator in accordance with an agreement made by them.

7. Under sec. 4041b, Stats., the supreme court has power to make a proper allowance for services and disbursements in that court of the guardian *ad litem* for infants who are necessary parties to a proceeding in the settlement of an estate; but any allowance for his services and disbursements in the county and circuit courts should be adjusted and made by those courts.

APPEAL from a judgment of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge. *Affirmed.*

Edward P. Allis died a resident of the city of Milwaukee, Milwaukee county, Wisconsin, on the 1st day of April, 1889. Deceased left his holographic will dated March 30, 1888. His will was proven and admitted to probate in the county court of Milwaukee county May 7, 1889, and letters testamentary thereon were issued to Margaret W. Allis, widow of said deceased, *William W. Allis, Edward P. Allis, Jr., Charles Allis,* and Edwin Reynolds, now deceased, executors named in said will. Edwin Reynolds died February 19, 1909. *William W. Allis, Edward P. Allis, Jr.,* and *Charles Allis* are the sole surviving executors and trustees under said will.

Edward P. Allis, deceased, left him surviving his widow, Margaret W. Allis, his sons, *William W. Allis, Edward P. Allis, Jr., Charles Allis, Jere Allis,* Ernst Allis, *Frank W. Allis, Louis Allis,* and *Gilbert Allis,* and his daughters, *Maude Allis Conway, Mary Allis Keeling,* and *Margaret Allis Norris,* his only heirs at law. Margaret W. Allis, widow, died testate at the city of Milwaukee December 20, 1909. Her last will and testament was proven and admitted to probate in the county court of Milwaukee county and letters of administration with the will annexed were issued to *Richard H. Norris* of Milwaukee, Wisconsin, who qualified and acted as such administrator with the will annexed.

Ernst Allis, son of Edward P. Allis, died November 9, 1894, leaving him surviving *Penelope Winston Allis,* his widow, and *Margaret W. Allis* (now *Harrison*), his daughter, his only heirs at law. His last will and testament was admitted to probate in the county court of Milwaukee county and letters testamentary issued thereon to Milwaukee Trust Company, now *First Savings & Trust Company,* and *John W. Barr, Jr.,* who qualified and are the acting executors.

All the surviving heirs at law of said Edward P. Allis, deceased, are of full age and free from any disability which would prevent them from appearing in court and protecting their rights.

*Edward P. Allis III,* son of *Louis Allis,* aforesaid, *John Henry Keeling, Jr.,* son of the daughter *Mary Allis Keeling, Richard H. Norris, Jr., William A. Norris, Margaret A. Norris, Thomas W. Norris,* and *Frank W. Norris,* children of the daughter *Margaret Allis Norris,* aforesaid, *Maude Allis* and *William P. Allis,* children of the son *Edward P. Allis, Jr.,* aforesaid, and *Gilbert Allis, Jr.,* and *Amber Allis,* children of the son *Gilbert Allis,* aforesaid, are all under age and represented by guardian *ad litem* in this matter.

The surviving executors of and trustees under the last will and testament of Edward P. Allis, deceased, petitioned the

county court of Milwaukee county in March, 1913, praying that the estate of said deceased might be adjudged fully settled and they be discharged as such executors and trustees.

On February 10, 1914, the county court of Milwaukee county found and adjudged that the will of said Edward P. Allis, deceased, was valid and that the grandchildren of said testator took no interest in said estate thereunder; that the executors had executed their trust as fully as the scheme was capable of execution and disposed of the property pursuant to the terms of the trust and to the satisfaction of all parties interested, and that said surviving executors and trustees be discharged from all their duties and obligations as such executors and trustees.

Upon appeal from this judgment to the circuit court the circuit court found the will invalid, but construed it assuming its validity, and found and concluded that, assuming said will to be valid, the grandchildren of the testator took no right, title, or interest thereunder in or to any of the estate left by said testator or in or to the rents or profits thereof; that, assuming the will to be valid, the executors and trustees fully administered and distributed the estate in accordance with the terms of the will; and that such executors and trustees were entitled to their final discharge as prayed in the petition. The circuit court further found that the will was wholly void and that said Edward P. Allis died intestate, and that his property has been distributed between his widow and heirs at law in accordance with their agreement. The court further found and adjudged that the decree of the county court of Milwaukee county declaring the said estate finally settled and distributed and discharging the surviving executors and trustees from further liability be affirmed. From this judgment of the circuit court the grandchildren of Edward P. Allis, deceased, by their guardian *ad litem,* appealed to this court.

*Christian Doerfler,* guardian *ad litem,* for the appellants.

For the respondents there was a brief by *Geo. D. Van Dyke*

and *Thomas M. Kearney* (in which *Geo. P. Miller* and *Jackson B. Kemper,* attorneys for certain respondents, also joined); and the cause was argued orally by *Mr. Kearney, Mr. Van Dyke, Mr. Arthur W. Fairchild,* and *Mr. Kemper.*

The following opinion was filed April 11, 1916:

KERWIN, J.    Edward P. Allis, at the time of his death, conducted and operated large machine shops and foundries consisting of what is known as Reliance Works, covering about three blocks, the Bay State Works, covering about one block, the South Foundry, covering about ten acres, and certain dock property on the south side, all in the city of Milwaukee, Wisconsin.

The real estate, tools, and machinery were carried on the testator's books at the time of his death at about $1,000,000. The business was operated by the deceased and his sons *William W., Edward P., Jr.,* and *Charles Allis,* who constituted the executive operating force.    The three sons mentioned were connected with the father's business for a period of about twenty years prior to his death.    *Louis Allis* was connected with the business for a period of about six months prior to the testator's death, but none of the other boys had been connected with the business before that time.

At the time of the death of the testator the business had a working capital of $550,000 and an outstanding indebtedness of about $415,000, so that the net working capital of the business at the time of the death of the testator was about $136,000. The indebtedness outside of the business was estimated somewhere about $490,000.    After the panic of 1873 the testator became insolvent and compromised with his creditors.    After the testator's death it was found difficult to carry on the business on account of lack of credit on the part of the estate. Under the provisions of the will the executors and trustees were required to execute a mortgage upon the plant in the sum of $250,000 for the benefit of the so-called daughters' fund

provided for in the fourth provision of the will. This mortgage was not recorded because of the financial condition existing. The son *Charles* raised money upon his individual life insurance in order to help along the business. It appeared to the executors and trustees under the will shortly after the death of the testator that the business of deceased was in such shape that it was doubtful whether the same could be continued successfully, and if not it would be necessary to go into liquidation, in which event little would be realized for those interested in the estate. A large part of the value of the business consisted in the fact that it was a going concern. The testator was engaged in building large engine units and his field of operation covered the world. The least amount of capital necessary to carry on the business successfully was thought to be $1,000,000.

In addition to the property in the business there was also property owned by the testator outside of the business, namely, the summer home, Lakeside, situate at Pewaukee Lake, a farm known as "Reliance Stock Farm," located at Isinours, Fillmore county, Minnesota, 68,000 acres of land in Michigan, and his life insurance.

In view of the situation existing at the time of the death of the testator the executors under the will conferred with General Winkler, legal adviser of the deceased during his lifetime, for the purpose of ascertaining the best methods to be pursued to avoid impending difficulties. The result of this conference was the perfection of a plan by which it was understood that the property of the testator might be preserved and the terms of the will, whether valid or not, be given substantial effect, in pursuance of which on February 10, 1890, all interested in the estate, except the son *Jere,* who had prior to that time disposed of his interest to his mother, made, executed, and delivered an agreement in writing relating to the property belonging to the estate. At the time this agreement was entered into all the children of the testator were of age

except *Margaret* and *Gilbert Allis*.     This agreement provided that the property referred to in the fourth paragraph of the will be granted to the executors and trustees to hold for the sole use and benefit of the widow, Margaret W. Allis, during her lifetime, and upon her death to be conveyed with the accumulation thereof to the three daughters in such proportion as the widow might designate by her will, and in the event of the widow dying intestate then to said daughters in equal shares.     It was further provided in said agreement that a corporation be organized under the laws of Wisconsin to be named the Edward P. Allis Company, with a capital stock of $1,500,000, and that all the property of the deceased and of the estate of Edward P. Allis, deceased, except the property heretofore mentioned and described in the fourth paragraph of the will, and certain other described properties, be conveyed to said corporation, the Edward P. Allis Company. This contract provided in detail for the assumption and payment of indebtedness and certain other obligations and provided generally for the management and carrying on of the business of said deceased in harmony with the provisions of the will and in the manner thought for the best interest of all parties concerned.

On June 23, 1892, on account of dissatisfaction expressed by the widow and some of the children of deceased, a new agreement was made by the terms of which certain additional provisions were made for the widow, and this agreement was signed by *Margaret* and *Gilbert Allis,* children who had become of age since the signing of the prior agreement.     From the time of making this agreement and until 1900 the business of Edward P. Allis Company was successfully conducted by the executors and trustees on a large scale.     Afterwards on account of large business combinations, it was thought advisable to sell out to or make some combination with the Allis-Chalmers Company and a deal was carried out which resulted in a sale of the interests of the Edward P. Allis Company to

the Allis-Chalmers Company. The agreement respecting the sale to the Allis-Chalmers Company was participated in by all the stockholders of the Edward P. Allis Company and a resolution was adopted authorizing the sale, and the terms of the resolution were carried out and the respective parties entered upon the execution of such agreement pursuant thereto and received out of the proceeds derived from such sale their respective proportionate shares of the preferred stock in the Allis-Chalmers Company.

During the various transactions from the time of the death of Edward P. Allis up to the time of final division of the stock received upon the sale of the Edward P. Allis Company the interests of the grandchildren of Edward P. Allis were in nowise considered, and obviously from the dealings and transactions it was not thought that they had any interest.

It is quite clear from the record that if the grandchildren have no interest, even assuming the will to be valid, then the judgment of the court below must be affirmed, because it appears that all other parties interested participated in and assented to the various transactions and the administration of the estate resulting in the order of distribution and discharge which is appealed from here.

The appellants complain of the conclusions of the court below, which are as follows:

(1) That the will of Edward P. Allis was wholly void and that said Allis died intestate and his entire property has been distributed between the widow and heirs at law in accordance with their agreement of February 10, 1890, and modifications thereof, and that said executors and trustees are entitled to their final discharge as prayed for in their petition.

(2) That the will suspends the absolute power of alienation, contrary to secs. 2039, 2061, 2062, 2085, sub. 5, and 2091, Stats.

(3) That every portion of the will found to be invalid is a material part thereof, the validity of which dislocates the en-

tire testamentary scheme of the testator and without which it cannot be presumed he intended the other parts of his will to stand valid, and that by reason of the invalidity of each of said parts the entire will fails.

(4) That the order or decree of the county court of Milwaukee county declaring the estate of Edward P. Allis finally settled and distributed and discharging the petitioners as surviving executors and trustees from all further liability or duty in respect thereof should be affirmed.

(5) Assuming the will of said testator to be valid, his grandchildren took no right, title, or interest thereunder in the estate left by said testator, or rents, issues, income, or profit thereof.

(6) Assuming the will to be valid, the executors and trustees and those interested in the estate of said testator had the right under said will to dispose of the property outside of the business, including the property mentioned in the fourth paragraph of the will, in accordance with the agreement of February 10, 1890, as modified, and that the order or decree of the county court discharging the executors and trustees in respect thereof remaining unmodified, unappealed, and unreversed, estops all parties to these proceedings from setting up any claim thereto except under said order or decree.

The important question on this appeal is whether the grandchildren of the testator, Edward P. Allis, have any interest in his estate, assuming his will to be valid. If not, then no other question discussed need be considered.

It is strenuously contended by the learned counsel for the grandchildren, who is acting as guardian *ad litem,* that from the four corners of the will it appears that the scheme of the testator was that his estate should remain in the family, and that the grandchildren took an interest in it. It is said that an examination of the whole will shows that it was the intention of the testator to preserve and conserve the estate for the benefit primarily of his family and his descendants. The

first and second paragraphs of the will provide for continuing the business. The third provides that during the life of the wife of the testator and minority of the children all needed money to maintain the home of testator's wife and defray her expenses and the expenses of the minor, unmarried, or unsettled children in the same manner as was the custom of the testator during his life be furnished. The fourth paragraph of the will gives to the testator's trustees the homestead property and personal property in and about the homestead, including furniture, pictures, plate, books, etc., of the value of $200,000, and the sum of $250,000 to be secured by first mortgage on the business property, to be held apart from the business for the safety of testator's wife and minor and unsettled children and the ultimate benefit, in the discretion of the wife, if living, of his three daughters, *Maud Allis, Mary W. Allis,* and *Margie Allis.* This fourth paragraph further provides for what is designated as the daughters' fund for the benefit of the widow and daughters.

Counsel insists that from the whole will it seems that the testator intended to conserve the estate for the benefit, primarily, of his family and his descendants, and refers to the following in paragraph 6:

"I hereby give and bequeath to my said trustees, to be held for the use, or assignment, of my wife during life, and after her death for a joint summer residence of my children and their families, as they may agree among themselves—particularly those residing in Milwaukee—my Lakeside property, consisting of three separate pieces of ground, with cottage, boat house, furniture, boats, etc. . . . If at any time it shall be the joint wish of my wife and children residing in Milwaukee, or said children after her death, to have the property sold, it may be sold and the proceeds go into my estate fund."

Counsel insists that an analysis of the foregoing provision shows that it creates a life estate in the widow, after her death a life estate in the children residing in Milwaukee, and upon the death of the children the property vests in their children,

if any they have, and if they should die without children the interest of such child passes into the estate fund, and that the grandchildren in such case would take a contingent remainder subject to the right being defeated.

Counsel dwells upon the thirteenth paragraph of the will as showing a gift to grandchildren and contends that language providing that in the event of a child dying childless, or his child not reaching majority, the portion of such child shall revert to the estate, and the provision that the amount set over to children connected with business shall not be drawn out, show the intent of the testator that the estate should remain in the family or blood relations. Other paragraphs of the will are referred to by counsel for appellants as tending to show that it was the intention of the testator that the property should remain in the family and not pass to others not of their blood.

But while it is true that the will abounds in expressions showing an intention to keep the estate in the family of the testator, and while there are express devises and bequests to the widow and to children of the testator, there is no direct devise or bequest to a grandchild.

It is insisted by respondents that grandchildren by daughters are estopped by the decree of the county court from claiming any interest under the will, and further that they in fact took no interest. We shall not pass on the question of estoppel, although there is strong ground for this claim, because we are convinced that none of the grandchildren took any interest under the fourth paragraph of the will.

The gift to the daughters under the fourth paragraph of the will is defeasible on condition subsequent and in no event vests in the grandchildren. If a daughter had a child who attained majority living the daughter, the gift vests in the daughter absolutely. There is no express gift over to grandchildren on the termination of the estate in a daughter.

A gift to a grandchild cannot be implied from a gift to a daughter, defeasible if the daughter dies without children

surviving. *Anderson v. United R. Co.* 79 Ohio St. 23, 86 N. E. 644, 51 L. R. A. N. s. 477, at p. 481, and note p. 485; approved in *Messenger v. Anderson,* 225 U. S. 436, 32 Sup. Ct. 739; *Baker v. Estate of McLeod,* 79 Wis. 534, 48 N. W. 657; *Burnham v. Burnham,* 79 Wis. 557, 48 N. W. 661.

Nor do we find any gift to grandchildren under any other paragraph of the will. The stock farm was given to the son *Jere,* "Lakeside" was given for a joint summer residence, but if sold the proceeds to go into the estate fund; interest in Daisy Roller Mills, part of estate fund, and Michigan lands to be divided among testator's children as deemed best by his wife. All the remainder of testator's property may be classed as property invested in the business. The so-called estate fund may also be regarded as part of the business trust.

Paragraph 2 of the will provides:

"I desire and direct that the business essentially as now organized and conducted shall be conducted uninterruptedly and indefinitely under a charter . . . My individual account on the books of the business shall be transferred to the account of 'Edw. P. Allis Estate,' and there shall go to its credit the entire profits and accumulations of the business and also the income and proceeds of all sales of any property hereby given to said trustees and not immediately connected with the business, the same as all such things have heretofore gone to my individual account."

The provisions in the will respecting the estate fund show that it was a part of the business trust created by the will and was by the terms of the will to remain during the minority of the children and the life of testator's wife, and rather exclude than support the idea that there was any gift out of this fund to the grandchildren. The will provides:

"3. I desire and direct that my business and my estate fund or account shall remain and be conducted as above during the minority of my children and during the life of my wife." . . .

"13. Upon the death of my wife and the majority of all my children, if at that time the character and occupation of them all is reasonably established, and if not, when such char-

acter and occupation shall be settled and provided for, I direct that the final division to the children actually engaged in or connected with the business of Edw. P. Allis & Co. be made upon the following basis: . . ."

The will also provides for sale and termination of the business and division if in the unanimous opinion of those interested the business has become unprofitable. The division referred to manifestly means a division of the proceeds among those interested.

True, there are provisions in the will to the effect that the business be "continued uninterruptedly and indefinitely under a charter," but such provision must be construed in the light of other provisions of the will.

Paragraph 13, above quoted, particularly provides for final division, but makes no provision for grandchildren, and the final division provided vests the title in the parties in interest unless divested by some provision of the will, and then it would go into the estate fund and not pass to grandchildren.

There are questions raised by counsel for respondents respecting validity of inconsistent provisions in the will, defeasance clauses, and limitation which are claimed to be void as repugnant to the grant, and a long line of authorities are cited in support of the position taken by counsel. We do not, however, find it necessary to discuss these authorities.

It is true that some of the provisions in the will evince a purpose to keep the property in the family of the testator, to prevent it from going to strangers to his blood. We therefore look in the will to find some limitation over to grandchildren, but we find none, and the testator having made no limitation over to grandchildren we can make none. *Danforth v. Oshkosh,* 119 Wis. 262, 97 N. W. 258; *Parsons v. Winslow,* 6 Mass. 169; *Wool v. Fleetwood,* 136 N. C. 460, 48 S. E. 785. No other questions need be considered.

*By the Court.*—The judgment appealed from is affirmed.

The following opinion was filed June 13, 1916:

KERWIN, J.   A motion was made in this court in the nature of a motion for rehearing, asking the court to change the mandate by making an allowance to the guardian *ad litem* for costs, disbursements, and fees.   It is set out that $370.49 is disbursements, all of which was expended in this court except $33.25; that the total time consumed on appeal to the supreme court was two days at Madison, one day awaiting trial and the other in argument; that the time expended in getting out bill of exceptions, preparing record and briefs, and consideration of the case for this court was twenty-eight days. Claim is also made for services and disbursements in the county and circuit courts.   We shall only consider the allowance in this court.   Any allowance for services and disbursements in the county and circuit courts must be adjusted and allowed by such courts.   This court has power under sec. 4041*b*, Stats., to make proper allowance to the guardian *ad litem* for services and disbursements in this court.   We think $500 a reasonable allowance for services and $337.24 for disbursements, making in all $837.24.

*By the Court.*—It is ordered that $837.24 be and the same is allowed Christian Doerfler, guardian *ad litem,* for services and disbursements in this court, and the mandate is amended accordingly.   No costs are allowed on this motion.