[No. 30794. Department Two. May 23, 1949.]

*In the Matter of the Estate of* EDNA J. QUICK, *Deceased.* E. R. BUTTS *et al., Appellants,* v. SEATTLE-FIRST NATIONAL BANK, *as Executor, et al., Respondents.*[1]

[1]Reported in 206 P. (2d) 489.

*McMicken, Rupp & Schweppe* and *Mary Ellen Krug,* for appellants.

*Emory, Howe, Davis & Riese,* for respondent Seattle-First National Bank.

*Meier & Murray* and *Hyland, Elvidge & Alvord,* for respondent Seattle Consistory, Scottish Rite of Freemasonry.

SCHWELLENBACH, J.—This is an appeal from a decree of distribution entered in the estate of Edna J. Quick, deceased.

Edna J. Quick died testate on the first day of April, 1946. By paragraph I of her will, she bequeathed $5,000 to her sister, Effie M. Griffith, of Niles, Michigan. Paragraph III bequeathed $50,000 in trust to the Children's Orthopedic Hospital, at Seattle; paragraph IV bequeathed $50,000 in trust to the Masonic Home at Puyallup (now at Zenith), for

the support and maintenance of its patients; paragraph V, $25,000 in trust to the University of Washington, as an endowment for the establishment of a chair in the Department of Pharmacy; paragraph VI, $5,000 in trust to the Seattle Day Nursery. Paragraph VII was as follows:

"I give, devise and bequeath all the rest, residue and remainder of my estate of whatsoever nature and kind unto the Lawson Consistory No. 1, Scottish Rite Masons, in Seattle, Washington, to have and to hold as an endowment exclusively for the purpose of assisting needy members of the Scottish Rite Masons to the extent of One Hundred Dollars ($100.00) a year, altogether and not for any one, which sum has heretofore been contributed by me yearly, and also if the Board of Trustees shall so determine the portion of this endowment not required for this annuity may be used to erect a Scottish Rite Temple, either exclusively for Scottish Rite Masons or in conjunction with other Masonic bodies, as the Board of Trustees may determine, and it is my express wish and desire that said endowment shall not be used in any other way. Said endowment to be known as the John B. Quick endowment."

Seattle Consistory has succeeded Lawson Consistory No. 1.

At the hearing on the final report, certain heirs of Mrs. Quick filed objections to the distribution of any assets of the estate to the Seattle Consistory on the grounds that paragraph VII of the will is void for indefiniteness; that Seattle Consistory is an unincorporated, noncharitable association, and as such has no capacity to accept a bequest of personal property; that it has no capacity to be beneficiary of a noncharitable trust of personal property; that if paragraph VII purports to create a trust, the trust is void since the trust does not terminate within the lives of persons in being and twenty-one years.

The testimony showed that after the payment of the specific bequests there would remain in the residuary estate approximately $172,000, which includes the $5,000 bequest to testatrix' sister, who predeceased her. It was also shown, and not disputed, that it would require only $5,000 thereof

to support an annuity of $100 per year for the relief of needy Masons.

The trial court ordered distribution of the residuary estate to the Seattle Consistory after payment of Federal and state estate and inheritance taxes, costs of administration, income taxes, and all litigation concerning the estate shall have been closed. From this decree the heirs appeal, assigning as error the finding of the trial court that clause VII of the will does not violate the rule against perpetuities.

■ The rule against perpetuities prohibits the creation of future interests which by possibility may not become vested within a life or lives in being plus twenty-one years, from the date of the testator's death. The purpose of the rule is founded in the public policy of preventing the fettering of property over long periods of time by indirect restraints upon its alienation. The rule operates so as to cancel any interest, the vesting of which is to be, *or may be*, postponed beyond the period prescribed. 41 Am. Jur. 50, Perpetuities and Restraints on Alienation, § 3. It does not apply if the estate vests immediately upon the testator's death.

Ordinarily, an estate vests immediately upon the testator's death. However, its vesting may be delayed for the duration of one or more intermediate estates, or until the happening of a future event, provided for in the testator's will. Appellants do not question the validity of the first portion of clause VII. We deem it sufficient to say that such portion sets up a valid trust for a charitable purpose.

The question before us now is whether the equitable interest in the excess of the residuary estate given to the consistory vested upon testatrix' death, or when and if the consistory decides to erect a Scottish Rite temple. Is the future action of the board a condition precedent to vesting of the interest, or is it such that a failure to act would result in divesting the interest?

■■ "If no future time or event is involved the interest is clearly vested; and no question arises as to its being contingent. The use of the present tense suggests, prima facie, an immediate vesting.

"If a future event or time is involved, the nature of the interest depends on whether such future time or event concerns the gift itself or merely the payment of it. If the former, it is contingent; if the latter, it is vested." 3 Page on Wills 697, Vested and Contingent Interests, § 1260.

"Conditions as to their effect upon the estate to which they are annexed are of two kinds, precedent and subsequent.

"A condition precedent is an event the happening or not happening of which causes an estate to vest or to be enlarged. A condition subsequent is an event the happening or not happening of which determines an estate already vested." 3 Page on Wills 744, Conditions, § 1278.

"Whether a condition is precedent or subsequent depends upon the intention of testator as expressed in the will when read in the light of the surrounding circumstances. It is often difficult to distinguish between the two. The use of the term 'condition precedent' is not conclusive; and words which, with one context, create a condition precedent, may create a condition subsequent with a different context.

"It has been said that a condition which would ordinarily be considered precedent may be construed as a condition subsequent where the gift is to a charity.

"As between precedent and subsequent conditions, subsequent conditions are preferred in construction, but if the language of the will shows that testator intended to create an estate upon condition precedent, effect will be given thereto.

"If the performance of the condition may, by the terms of the will, happen when the estate vests, or after it vests, or if the will provides for performance after the property passes, or for performance by means of the property, such as payments out of the fund which is given, or if the gift is to fail or to be divested on breach of condition, or if the gift is to be operative so long as the beneficiary observes a certain condition, the condition is prima facie subsequent. If performance, by the terms of the will, is to extend over a period of time, or if the time for performance is indefinite the condition is treated as subsequent. A gift to A, to become a fee if A is capable of prudent control thereof at the end of twenty years, and, if not, to be a life estate, is upon condition subsequent.

"If the language of the will shows that a condition was intended, the absence of a gift over on failure of the condi-

tion tends to indicate that the condition is subsequent rather than precedent." 3 Page on Wills 750, Conditions, § 1281.

■ Whether an estate is to vest immediately, or subsequently, depends upon the testator's intention, as found from an examination of the will. Certain rules have been laid down to assist the courts in determining that intention:

(1) If necessary in arriving at the intention of the testator, aid may be sought from the testator's situation, his relationship to the parties named in the testament, his disposition as evidenced by provisions to be made for them, and the general trend of his benevolences as disclosed by the testament.

■ (2) It is a well-settled and just rule that the law favors the early vesting of estates.

■ (3) The remainder shall not be considered as contingent in any case where, consistently with the intention of the testator, it may be considered vested.

(4) The law favors that construction which holds a remainder vests rather than that which considers it contingent, even in cases where the question is doubtful. *Shufeldt v. Shufeldt*, 130 Wash. 253, 227 Pac. 6.

■ The rule which states that, where more than one construction is possible, the one which makes a bequest valid will be followed, is even more strongly applied in construing a residuary clause. Or, speaking generally, the presumption against intestacy is particularly strong where the subject of the gift is the residuary estate. *Brooks v. Goff*, 127 N. J. Eq. 115, 10 A. (2d) 466, and cases cited therein. When a specific bequest is found to be invalid, the bequest falls into the residuary estate; but where a residuary bequest fails, the testator will usually die intestate as to it.

"It has been generally thought that a very clear intention must be indicated, in order to postpone the vesting under a residuary bequest, since intestacy is often the consequence of holding it to be contingent, or, at least (and this is the material consideration) such *may be* its effect; for, in construing wills, we must look indifferently at actual and possible events. . . .

"It seems that where the testator first gives the residue in term which would, beyond all question, confer a vested interest, the addition of equivocal expressions of a contrary tendency will not suspend the vesting." 1 Jarman on Wills 822 (6th ed.).

■ That the courts will find a condition to be precedent only when the will manifests a clear intent on the part of the testator, is shown in cases similar to the one at bar.

In *Maguire v. City of Macomb*, 293 Ill. 441, 127 N. E. 682, the will provided:

"*Eighth*—I further give, devise and bequeath to the city of Macomb, subject, however, to the conditions hereinafter named and set forth, following described real estate: [Here follows a description of about seventy-two acres of land situated in McDonough county, Illinois.] The devise of the several tracts or parcels of land mentioned in this eighth paragraph to the said city of Macomb is subject, however, to the following conditions: That the said city of Macomb, within a reasonable time after this my last will and testament has been admitted to probate, file in the county court of this county, by its proper corporate officers, an acceptance of this devise under the conditions herein set forth; that the said city of Macomb, within a reasonable time, take possession of several tracts or parcels of land and improve the same in a manner adapted to public park purposes; that the said city of Macomb maintain said several tracts or parcels of land as a free public park for the use and benefit of the general public; that the said city of Macomb, through its city council, provide for the proper governing, caring for and policing of said several tracts or parcels of land by ordinances or by providing for a board of commissioners for such purposes. In the event the city of Macomb neglects or refuses to comply with the conditions of this devise, or if for any reason the said city of Macomb cannot legally comply with the conditions herein, or in the event the city of Macomb accepts this devise and fails or refuses to comply with any and all of the conditions herein set forth, then I hereby direct and authorize and empower my said executrix hereinafter named to sell all of said tracts or parcels of land mentioned in this eighth paragraph and to use the proceeds of such sale or sales for such charitable purposes as she shall deem best and proper."

The city, by resolution of its council, accepted the gift, but did nothing further to take possession. In holding that the devise did not become effective, the court said:

"The general rule is that a devise or bequest upon conditions precedent does not become effective until the conditions are performed, and when a condition precedent embraces several requirements the estate does not vest until all of them have been complied with. (2 Alexander on Wills, sec. 1035; *Nevius v. Gourley,* 95 Ill. 206.) This is in accordance with all the definitions given of conditions precedent by standard authors. Blackstone defines conditions precedent as such as must happen or be performed before the estate can vest or be enlarged, and conditions subsequent as such as by failure or non-performance an estate already vested may be defeated. (2 Blackstone's Com. 154.) From the language of the eighth clause of the will, if noted carefully, it will be seen that the words 'upon condition' do not occur anywhere therein, and there are no other words of equivalent meaning to indicate that the conditions are conditions subsequent. There is no clause providing for forfeiture or re-entry, and some such words are usually employed when the intention is to create a condition subsequent. *Gallaher v. Herbert,* 117 Ill. 160."

In *In re Thompson,* 304 Pa. 349, 155 Atl. 925, 76 A.L.R. 1339, the will provided:

"Third. 'I hereby bequeath, to be held in equal joint ownership, to Mrs. Helen McCartney, in recognition of her long and faithful service in the employ of my brothers and myself; my nephew, Albert Roland Thompson; and my niece's husband, Thomas O. Williamson, all the real estate and machinery and equipment owned by me at the time of my death, without deduction for inheritance or legacy taxes. The bequest mentioned in this paragraph is conditioned upon the formation of a partnership within one (1) year after my death by appropriate agreement, by the three people who are to receive it. . . .' "

The nephew was a minor, and a guardian was appointed for him. Following the testator's death, Mrs. McCartney and Mr. Williamson sought to have the partnership created, but the guardian refused to join. In holding that this was a condition precedent, and that the bequest failed, the court said:

"This may be a hard case, but we agree with the conclusion of the orphans' court. Whether a condition shall be construed as precedent or subsequent depends upon the intention of the testator as expressed in the will: 40 Cyc. 1689. Here the primary intent was to have the business continued in the name of Thompson Brothers, with some member of his family interested therein. As to this, we adopt the language of the orphans' court: 'An examination of the entire will satisfies us that Mr. Thompson's prime purpose was to see that his business should continue under the trade name which he had used in his lifetime, and that one person of his own [family] should be a member of the partnership contemplated. To make certain that this relationship should be brought about, he designated, first of all, the partners and the share of each in the assets and profits of "their firm" and then when he had provided for this and for the purpose of assuring its future, he devised his business property to these benficiaries, if, and only if, the partnership should be formed within one year from his death. It seems clear, therefore, that this condition was inseparably annexed to the gift and not a limitation upon its enjoyment. It is, therefore, a condition precedent.' It was optional with the legatees whether they would accept the bequest, subject to the condition, but they could not take it otherwise. The intent of the testator could be carried out only by forming the partnership and taking over the property as such. The time for performance of the condition here being definitely limited to one year is a circumstance indicating that it is a condition precedent. Whereas, the fact that the time of performance is indefinite leads to the opposite conclusion. See *Finlay v. King's Lessee*, 3 Peters (U. S.) 346, 8 Curtis 438, 444; 28 R. C. L., p. 312."

In *Fidelity Union Trust Co. v. Laise*, 127 N. J. Eq. 287, 12 A. (2d) 882, it was held that, where the testator devised property to a certain society to maintain a home for aged scientists, and provided that, if the society should "refuse" to accept the devise, his trustees should be empowered to turn the property over to a Christian denomination to be selected by them for the maintenance of a home for orphaned children, it was the testator's intention to provide for a gift over if the society should not take, and there was no necessity that the society actually renounce the devise, but it

was necessary merely that the society should fail to accept the devise.

Where there is no clear intent to defer the vesting of the estate, a condition will be held to be subsequent rather than precedent. If the will is susceptible of two constructions, the one which will avoid intestacy will be presumed.

In *Colonial Trust Co. v. Waldron*, 112 Conn. 216, 152 Atl. 69, the will provided:

"9. All of the rest and residue of my estate, both real and personal, and wherever situated, I give, devise, and bequeath to The Colonial Trust Company, of Waterbury, Connecticut, in trust, however, for the uses and purposes following: To hold, possess, manage, invest and reinvest the same, with full power and authority to sell, lease, or mortgage the same and to execute any deeds or conveyances as may be necessary for that purpose, and generally to execute said trust in accordance with the laws of the State of Connecticut regarding investment of trust funds. I direct my said trustee to add the net income of said fund to the principal thereof, and further direct that said fund and all accumulations thereto, shall be held by said Trust Company and be disposed of in accordance with the provisions of this Will for the distribution of the rest and residue of my estate.

"For many years I have been of the opinion that public convenience and necessity required a bridge over the Narrows between First Bay and Second Bay in Highland Lake, in said Winsted, and if such a highway bridge is built by the Town of Winchester and opened for travel at any time within twenty-five years from the date of my death, I give, devise and bequeath to said Town all the rest and residue of my estate then in the hands of my Trustee for the purpose of defraying part of the cost of said bridge. If any of my real estate should then be unsold by my said Trustee, the same may be conveyed to the said Town of Winchester in part payment of this gift.

"In the event, however, that said bridge should not be built and opened for travel within twenty-five years from the date of my death, all rights of said Town in and to my residuary estate shall cease and determine and I give, devise and bequeath all of my residuary estate in the hands of my trustee to the Berkshire County Home for Aged Women, located in Pittsfield, Massachusetts, for the general pur-

poses of·said Home, the same to be to it and its successors and assigns forever."

It was contended that this gift failed because it was made upon a condition precedent, and was incapable of vesting until a period beyond that prescribed by the rule against perpetuities. The court held:

"The law favors a construction of the provisions of a will which will secure the early vesting of estates and recognizes that this will effectuate the intent of the testator 'where no other indication of that intent appears in the will as read in the light of the surrounding circumstances.' *Norton v. Mortensen,* 88 Conn. 28, 31, 89 Atl. 882. In *White v. Smith,* 87 Conn. 663, 673, 89 Atl. 272, we say: 'The first of these principles [favoring vested estates] is one of no small consequence, since the preference of the law for vested estates goes so far that a construction which makes an estate vested instead of contingent ought to be adopted if the language of the will will fairly admit of it. *Farnam v. Farnam,* 53 Conn. 261, 278, 2 Atl. 325, 5 id. 682.' The law will presume that the testator intended that the title to his estate should vest at the moment his will becomes operative unless the will clearly manifests an intent to postpone the vesting to a future time. *Johnes v. Beers,* 57 Conn. 295, 302, 18 Atl. 100. 'For all interests,' Cleaveland, Hewitt & Clark, Probate · Law and Practice of Connecticut (Ed. 1915), at page 600, says, 'are to be construed as vested if possible, "vested" meaning broadly "not subject to a condition precedent".' While at page 599 it is said, 'a condition will, if possible, be construed as subsequent rather than precedent, so that the estate will be vested but subject to be divested on the happening of the contingency.' This principle, as CHIEF JUSTICE PRENTICE pointed out in *White v. Smith, supra,* is founded on public policy, as well as that other principle, 'that if a provision is fairly open to two constructions, that which will avoid intestacy will be preferred.'

"Let us examine article nine to see if there can be found within it a clear manifestation of intent to defer the vesting of the testatrix's residuary estate beyond the period sanctioned by the rule against perpetuities. In this article the testatrix gives, devises and bequeaths the residue of her estate in trust to hold, manage, and invest, adding the income to the principal of the residue, and directing that the residue with the accumulations shall be disposed of as provided by the will for the distribution of the residue. Imme-

diately thereafter she gives, devises and bequeaths to the town of Winchester this residue, then in the hands of the trustee, for the purpose of defraying part of the cost of a bridge over the Narrows between First Bay and Second Bay in Highland Lake in Winchester, provided the same shall be built within twenty-five years of her death. In the event that the town shall not build the bridge within this period the testatrix provides that 'all rights of said Town in and to my residuary estate shall cease and determine,' and the same given, devised and bequeathed to the Berkshire County Home for Aged Women. The article thus authorizes the creation of a trust fund with the possibility of an accumulation of its income for twenty-five years. There is nothing in the language of this provision which expressly indicates an intention on the part of the testatrix that the vesting of the residuary fund was or might be contingent upon the building of the bridge within the twenty-five years. There is nothing from which, by reasonable construction, though read in the light of the circumstances, a clear implication of such an intent can be drawn. The language of the testatrix evidences a clear manifestation that she intended the estate to vest when the will became operative. In her substitutionary gift in the event that the town shall not build and open the bridge within the prescribed period, she provides that 'all rights of said Town in and to my residuary estate shall cease and determine.' Her language indicates her thought that the town had already acquired rights under her will and that it was fitting that she should make manifest her intention that they should cease upon the town's failure to carry out the condition of her gift. The condition attached to her gift was not a condition precedent but a condition subsequent. The application of the two principles of construction to which we have referred would have required this conclusion had not the language of the testatrix removed the issue of her intention from the realm of reasonable controversy."

In *Burnham v. Burnham*, 79 Wis. 557, 48 N. W. 661, the testator added the following codicil to his will:

"Whereas, I, George Burnham, of the city and county of Milwaukee, Wisconsin, have heretofore made my last will and testament in writing, bearing date the 22d day of April, A. D. 1874, in and by which I have devised and bequeathed to my son Daniel G. Burnham certain portions of my estate, and which I desire to change:

"Now, therefore, I do by this writing, which I do hereby declare to be a codicil to my said last will and testament, and to be taken as a part thereof, do hereby declare that my will is that my said son Daniel G. Burnham shall not have nor receive any part, parcel, or interest in and to my estate, real or personal, unless within five years after my decease he shall have reformed, and become a sober and respectable citizen of good moral character, of which my executors heretofore named, or the survivors of them, shall be the sole judge at that time. In the event that he shall at that time have become a sober man and have a good moral character in their opinion as aforesaid, I give, devise, and bequeath to him, and order paid over to him, one half of the property and estate bequeathed to him in my will aforesaid; and, if he shall continue to remain to be such sober man and have a good character, as aforesaid, in their opinion, for the further period of five years, then I order and direct that the other half of said devise and bequest be paid over to him as in said will provided, subject, however, to the conditions and limitations contained in this codicil."

The trial court held that the above codicil stated a condition precedent, and that the estate did not vest upon the testator's death. In reversing the judgment, the court said:

"It will be observed that the codicil did not in any way divert any part of Daniel G.'s share of the estate from the line of descent where it would have gone under the statute had no codicil been made, and Daniel G. had preserved the same and not disposed of it by will or otherwise. In other words, the testator did not by his codicil undertake to, immediately upon his death, disinherit Daniel G., but only in case he should first demonstrate his incapacity for taking care of his share of the estate by not reforming as and within the period specified. For the purpose of preventing his share of the estate from being squandered by him, therefore, the testator by his codicil withheld the possession and control of the same from him until he should first demonstrate his capacity or incapacity for taking care of it. But the withholding of such possession and control did not prevent his right to his share of the estate from vesting in him immediately on the death of his father, subject, however to the conditions named in the codicil. *Millard's Appeal,* 87 Pa. St. 457.

"It is undoubtedly true that 'in the construction of wills the law, in doubtful cases, leans in favor of an absolute,

rather than a defeasible, estate; of a vested, rather than a contingent, one; of the primary, rather than the secondary, intent; of the first, rather than the second, taker, as the principal object of the testator's bounty; and of a distribution as nearly conformed to the general rules of inheritance as possible.' *Smith's Appeal*, 23 Pa. St. 9.

"Upon the principles stated and the authorities cited in *Baker v. McLeod's Estate, ante,* p. 534, we must hold that Daniel G.'s right in equity to his share of the estate vested in him immediately upon the death of his father, subject only to be divested by his failure to perform the conditions subsequent named in the codicil."

If the testatrix had stopped in paragraph VII, after making the bequest for the benefit of needy members, we could hold that it was given for that sole purpose, and, after a showing that $5,000 would suffice, that the balance remaining would revert to the heirs under a resulting trust. But she went further, and used language indicating an intention to dispose of any excess which would otherwise have become impressed with a resulting trust.

We are here faced with the situation as it actually existed at the time the will was drawn. We must consider all of the surrounding circumstances, the objects sought to be obtained, and endeavor to determine what was in the testatrix' mind when she made these bequests. We must not make a new will for her. We must not warp her language in order to obtain a result which we might feel to be just. Our problem is simply this: What did she intend to do? But in determining her intent, we have a right, and it is our duty, to keep before us the well-established rule that people making wills do not intend to die intestate, and that the law favors that construction which holds that an estate vests, rather than that which considers it contingent.

The bequests to the Children's Orthopedic Hospital, the Masonic Home, the University of Washington, and to the Day Nursery were all specific as to use, but not one of these was subject to a condition precedent. All the rest of her estate she gave to the consistory. This gift was for the benefit of the needy members of the Scottish Rite Masons. She intended that the consistory hold the bequest in trust, the

582

income therefrom to provide an annuity to effectuate the charitable purpose mentioned.

However, she realized that all of her residuary estate might not be needed for that purpose. Therefore, she directed that if the consistory, through its board, so desired, the balance should be used to erect a temple. This was all done in the same breath (in the same sentence), as a part of the same transfer. She did not make a separate and distinct gift of the balance to vest upon the happening of a condition precedent. She had already given it to them for one purpose, and limited the use of the unrequired balance to a second purpose. But, she did not wish to make the erection of a temple mandatory, thereby imposing an express trust on the balance, so she left the use for that purpose (and no other) within the discretion of the consistory. Testatrix specifically disposed of part of her estate and gave all of the remainder to the consistory in her residuary clause. She had no intention of dying intestate and intended to dispose of the remainder of her estate in this one bequest for the two purposes mentioned in the paragraph, to vest upon her death.

■ We think that this case falls within the general rule that if the futurity is annexed, not to the substance of the bequest, but only to its enjoyment, the bequest vests immediately. Stated in another way, the bequest to the consistory vested upon the testatrix' death, although the use of the balance was postponed until it shall decide to build a temple.

Appellants seriously contend that the second portion of clause VII creates a power of appointment in the board of trustees, and that the power is void because of the rule against perpetuities. We do not believe that the testatrix intended to make any distinction between the consistory and the board. The board is the agent of the consistory. She gave the residue to the consistory with the right to use the excess not needed to provide the annuity, when and if the board, on behalf of the consistory, shall decide to erect a temple.

Having found that the gift vested in the consistory upon Mrs. Quick's death, no new legal relations would arise upon the erection of a temple. Nor do the heirs have an interest which would be divested. Therefore the board has no power to change legal relations with regard to the property, a necessary element of a power of appointment.

We are of the opinion that this was a present gift of the balance of the residuary estate for the specific purpose of erecting a temple, subject to be divested upon the nonperformance of the condition subsequent within a reasonable time. The question as to what would be a reasonable time is not before us. Discussion of the other points raised is not necessary to a disposition of the case.

The judgment of the trial court, as modified by this opinion, is affirmed.

JEFFERS, C. J., ROBINSON, SIMPSON, and GRADY, JJ., concur.

---

June 29, 1949. Petition for rehearing denied.